**In re William Proctor EMNETT, Debtor.**

**William Proctor EMNETT, Plaintiff,**

**v.**

**UNITED STATES of America, et al., Defendants.**

**Bankruptcy No. 89–01102. Adv. No. 89–0199.**

United States Bankruptcy Court, E.D. Kentucky.

April 18, 1991.

---

9. Tr. p. 5, l. 5–p. 6, l. 4.

10. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

**600**

David E. Middleton, Asst. U.S. Atty., Lexington, Ky., for defendant, U.S.

Jim M. Alexander, Lexington, Ky., for plaintiff, William Proctor Emnett.

## MEMORANDUM OPINION

CLIVE W. BARE, Bankruptcy Judge.

William Proctor Emnett (Emnett), the above debtor, seeks to discharge a Health Education Assistance Loan (HEAL) debt pursuant to the provisions of 42 U.S.C. § 294f(g). The parties agree that only paragraph 2 of that section, allowing discharge "upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable," is in dispute.[1] Trial was held March 27, 1991. Trial stipulations and exhibits have been filed. Also, the parties have agreed that the Statement of Facts, pages 1 to 14 of Plaintiff's Trial Brief, filed March 15, 1991, may be treated as testimony of the debtor in addition to the debtor's oral testimony adduced at trial.

### I

The debtor is 53 years of age. From 1957 through August of 1976, he was employed by Ashland Oil Company (Ashland Oil). He began there in 1957 as a co-op student and became full-time in 1961. While at Ashland Oil the debtor worked two years in the Engineering Department; six years in the Computer Science Department, including four years as Manager of Technical Computing; three years as Assistant Manager of the Corporate Planning and Analysis Department; and four years as Executive Assistant to a vice-president. Emnett voluntarily resigned his position at Ashland Oil in August of 1976 in order to enter dental school at the University of Kentucky. At the time of his resignation from Ashland Oil, his annual salary was approximately $36,000.00. He was married with two minor sons, ages five and seven years.

In order to attend dental school, the debtor cashed in his retirement benefits of $20,000.00 from Ashland Oil. By working at part-time jobs[2] and with the help of his wife, he was able to complete the first 1½ years of dental school without education loans. However, after the third semester, he needed loans to complete his education. One of the education loans obtained was from Chase National Bank guaranteed under the HEAL program in the amount of $10,000.00. It is that debt including accumulated interest which he proposes to discharge in this proceeding.

In June of 1980 Emnett commenced his dental practice in an office-sharing arrangement with Dr. Ron Heilig. His student loan obligations totaled some $35,000.00. He had other debts totaling $45,000.00. Emnett had $25,000.00 equity in a townhouse which he had purchased.

By the end of 1983, the debtor's obligations had increased to more than $130,000.00, not including student loan debts.

In January 1984 Dr. Heilig assumed $80,000.00 of the debtor's obligations and paid

---

1. (g) **Discharge in bankruptcy; release of debt**
   A debt which is a loan insured under the authority of this subpart may be released by a discharge in bankruptcy under any chapter of Title 11 only if such discharge is granted—

(2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable[.]

2. For a listing of the debtor's part-time jobs, see Plaintiff's Brief, pp. 2 and 3.

him $10,000.00 in cash, all in exchange for the debtor's dental practice. Emnett is unable to practice dentistry because of arthritis in his hands, exacerbated by participation in a vinyl repair business and home improvement activities. The debtor surrendered his dental license in December of 1985.

Between 1982 and 1986 Emnett owned or participated in various businesses: a Stop Smoking Clinic, a Shaklee direct sales business, a vinyl repair upholstery business. None of these ventures proved successful. In the spring of 1984 he fell behind on his mortgage payments on the townhouse, and the bank threatened to foreclose. The property was put on the market and sold for $57,500.00 with two mortgages against the townhouse being satisfied and leaving the debtor with an equity of $7,500.00. That equity was applied to his indebtedness to First Security Bank.

In March of 1986 Emnett obtained a real estate license and became a sales associate with Charlie Murphy, where he is currently employed.

On June 15, 1989 the debtor filed a Chapter 7 petition in bankruptcy, scheduling tax debts of $5,981.95 and unsecured debts of $53,886.88 including four student loans totaling $42,644.40 (HEAL debt scheduled for $25,350.00). Assets scheduled total $1,430.00, all claimed as exempt.

The debtor's wife is in good health and runs Stay Well Tanning Beds out of their residence. The debtor's two adult sons, born in 1969 and 1971, are both in good health and have no disabilities or unusual problems. Neither is dependent upon the debtor for support.

## II

On September 11, 1989 Emnett commenced this adversary proceeding against the United States of America, Kentucky Higher Education Assistance Authority, Indiana National Bank, United Student Aid Fund, and the University of Kentucky, seeking to discharge his student loan debts. Orders have been entered discharging all of these except the HEAL debt, the loans having become due more than five years before the date of the filing of the debtor's bankruptcy petition. 11 U.S.C. § 523(a)(8)(A).[3] The HEAL debt is, of course, the subject of the present litigation.

Since 1981, the first full year of the debtor's dental practice, the only payments made by Emnett on the HEAL loan were nine payments totaling $1,987.98, all made between May of 1981 and January of 1983.[4] The HEAL loan debt as of the date of filing of this adversary proceeding including interest and penalty was $27,231.73.

On November 25, 1985 the Department of Health and Human Services (the Department) made demand upon the debtor for payment of the HEAL loan which at that time amounted to $17,346.00. The debtor apparently did not respond. On February 28, 1986 the Department again made demand upon the debtor for full payment totaling $17,668.26 (principal and interest) by March 15, 1986. On October 27, 1986 the Department gave the debtor a "Final Notice" and demanded payment of $19,-652.80 (principal, interest, and late payment charge). Other entities holding student loan debts were also making demand for payments of their debts.

On June 21, 1988 the Defendant United States obtained judgment against the debtor in the United States District Court in the amount of $22,601.76 (principal, interest, and penalty), negotiations between the

---

**3.** (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, unless—

(A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

**4.** Payments on other student loans during this period totaled $1,288.00.

debtor and the United States Attorney's Office being unfruitful. After judgment was entered against the debtor, the United States Attorney, on August 5, 1988, wrote the debtor suggesting a minimum monthly payment of $150.00 per month. Ex. PP. The debtor apparently did not respond.

On February 16, 1989 the United States caused a garnishment to be issued to Charlie Murphy Realty against any funds owed to the debtor. Mr. Murphy apparently responded that the debtor's funds were not subject to garnishment because the debtor was an independent contractor. In late May of 1989 the United States caused a subpoena to be served upon Mr. Murphy for a deposition. "As a result of this harassment and threat to [the debtor's] employment, he filed Chapter 7 Bankruptcy on June 15, 1989." Plaintiff's pre-trial brief, p. 12.

In 1988 Emnett's net income from real estate sales commissions totaled $26,-669.00; his wife's earnings from the tanning business, $3,406.00. In 1989 the debtor netted $31,516.00; his wife, $3,141.00. In 1990 the debtor netted $36,000.00, his wife "broke even" in her tanning business.[5]

The debtor and his wife owe some $8,000.00 for tax liabilities incurred during 1990, no estimated payments to IRS having been made. Taxes for all prior years have been paid.[6]

The debtor submitted a "Current Expenses" statement indicating monthly expenses of $2,224.00 including payment of tax liabilities for 1990 at $666.00 per month.

### III

The only issue before the court is whether the nondischarge of the HEAL debt would be "unconscionable." From all the facts and circumstances surrounding the obligation and the debtor's present and future expectancies, the court finds that it would not.

"Unconscionable" is defined in Webster's New Collegiate Dictionary as "excessive," "unreasonable," "shockingly unfair or unjust."

The debtor asserts that his circumstances, taken as a whole, make nondischarge unconscionable. The United States strongly disagrees. The primary assertions on debtor's part that nondischarge of this debt is unconscionable are (1) the debtor has not benefitted from his profession and in fact cannot return to that profession; (2) he has suffered nothing but financial set backs as a result of his educational pursuits; (3) he is 53 years of age; (4) due to the passage of time and compounding interest, it is now impossible for him to repay the loan; (5) he has paid other debts; and (6) the United States has been unwilling to compromise or has been "unduly harsh."

The United States responds that under the case law applied to the facts in this case, the debtor's assertions are either irrelevant or are insufficient to make nondischarge of this debt unconscionable. The United States cites two cases as relevant to the case at bar: *In re Hines*, 63 B.R. 731 (Bankr.S.D.1986); *In re Green*, 82 B.R. 955 (Bankr.N.D.Ill.1988). Both cases involve debtors who were not enjoying the benefits of their loan-assisted education. Both had limited income to pay their HEAL loans. Both courts found that to meet the unconscionable standard, nondischarge would have to be "shockingly unfair, harsh or unjust."[7] Both found this standard required more than undue hardship. *See* 11 U.S.C. § 523(a)(8)(B). Further, the United States contends that the facts in those cases present more compelling circumstances than the present case: In *Hines* the debtor was dismissed from medical school for academic reasons and never re-

---

5. The debtor testified his total sales five year average ending 1990 was $2,139,647.00, commissions $50,316.00, expenses $25,259.00, and net $25,057.00. With regards to his wife's tanning business, her net has dropped from $8,511.00 in 1986 to "break even" in 1990.

6. In 1990 the debtor paid $11,766.00 for 1989 taxes.

7. In *Hines* the court noted that Words and Phrases defines "unconscionable" as "conduct that is monstrously harsh and shocking to the conscience." 63 B.R. at 736.

ceived his degree. Hines was married with two children, ages two and four years. Following dismissal from medical school, he held down several jobs. After filing for bankruptcy he began a tire business. He estimated his income at approximately $262.00 per month against $500.00 in expenses. His wife worked for the local police department with an annual salary of $7,000.00. In *Green* the debtor was a single parent with three children ages thirteen, ten and four. She was an attorney employed by the city of Chicago at an annual salary of $22,500.00.

In support of his assertion that the HEAL debt is dischargeable, Emnett cites two cases: *U.S. v. Lee*, 89 B.R. 250 (N.D. Ga.1987), and *In re Gronski*, 65 B.R. 932 (Bankr.E.D.Pa.1986). A close reading of those cases, however, furnishes the debtor only slight comfort:

In *U.S. v. Lee* the United States filed objections to the debtors' inclusion of HEAL loans in five Chapter 13 cases. The Bankruptcy Court held that 42 U.S.C. § 294f(g) did not affect the "super discharge" available in Chapter 13 cases. The District Court disagreed and held that HEAL loans can be discharged in bankruptcy only in accordance with the requirements of 42 U.S.C. § 294f(g), that conditionally dischargeable HEAL loans could be included in Chapter 13 cases at the debtor's option but that complaints to determine dischargeability of HEAL loans at that time were premature. With reference to HEAL borrowers, the court stated: "The requirements of § 294f(g) clearly impose more stringent repayment obligation on HEAL borrowers than are imposed on other types of student borrowers." *U.S. v. Lee*, 89 B.R. at 255.

*In re Gronski* also involved the United States' objection to a proposed Chapter 13 plan. The Bankruptcy Court held that a HEAL loan is dischargeable only if the requirements of 42 U.S.C. § 294f(g) are met. The court also held that including potentially nondischargeable loan under HEAL in the debtor's Chapter 13 plan did not preclude confirmation of the plan. The

Bankruptcy Court discussed other matters, none of which are helpful to a determination of the present case.

In *Matter of Johnson*, 787 F.2d 1179 (7th Cir.1986), the debtor sought to discharge a HEAL loan in a Chapter 13 case by resorting to 11 U.S.C. § 1328(a). The court held that when any debtor is seeking to discharge a HEAL loan, he or she must meet the three requirements specified in 42 U.S.C. § 294f(g).

In *In re Quinn*, 102 B.R. 865 (Bankr.M. D.Fla.1989), the debtor sought to discharge a HEAL loan in the amount of $4,794.57.[8] Quinn had studied dentistry at Meharry Medical College, Nashville, Tennessee. Following graduation she opened her own office in Florida as a sole practitioner. At the time of filing a Chapter 13 petition, she had five employees working in her office, each paid on a regular basis. In 1987 her professional association grossed approximately $170,000.00 to $180,000.00; in 1988, $190,000.00 to $194,000.00. She was unmarried with one dependent son, age nine. She was in good health and maintained a comfortable life style. Quinn sought a determination from the court that the nondischarge of the HEAL loan would be unconscionable. The court noted that in analyzing factual situations of HEAL debtors to determine unconscionability, the courts consider the debtor's:

1. income,
2. earning ability,
3. health,
4. educational background,
5. dependents,
6. age,
7. accumulated wealth, and
8. professional degree.

*In re Quinn*, 102 B.R. at 867.

Consideration of those factors led the *Quinn* court to determine it was not "unconscionable" for the debtor to repay the HEAL loan.

Analysis of these factors with the facts, the law, and logic in this case requires a finding that it is not unconscionable to

---

**8.** The debt computed through July 20, 1989 was found to be $9,032.90.

deny the debtor discharge of his HEAL loan. 42 U.S.C. § 294f(g). Although the debtor is 53 years of age, he has established himself in the real estate market with total sales averaging $2,139,647.00 per year over the past five years. In 1990 he netted $36,000.00. Although Emnett cannot practice dentistry at this time, he does have a degree and at least the possibility of putting his educational qualifications to work in a dental-related occupation. Emnett has no accumulated wealth; however, his children are no longer dependent on him for support, and his wife works outside of the home.

The court rejects the debtor's assertion that the United States Attorney's Office has harassed him or threatened his employment. As late as August 5, 1988, after judgment had been entered against him for the sum of $22,601.76, that office agreed to take a temporary minimum monthly payment of $150.00.[9] Ex. PP. The debtor apparently did not respond to the offer. The court is satisfied that the United States will give him the opportunity of paying the HEAL debt (judgment) in reasonable installments.

### ORDER

In conformity with the Memorandum Opinion this day entered, it is ORDERED that the Health Education Assistance Loan debt owed by William Proctor Emnett is nondischargeable, pursuant to 42 U.S.C. § 294f(g).

9. At that time the HEAL debt was some eight years old.