Ruth Ann KLINE

v.

UNITED STATES of America.

Adv. No. 92–4257–1.

United States Bankruptcy Court, W.D. Missouri.

June 22, 1993.

Maurice B. Soltz, Kansas City, MO, for plaintiff.

Judith M. Strong, Asst. U.S. Atty., Kansas City, MO, for defendant.

### ORDER AND MEMORANDUM OPINION

KAREN M. SEE, Bankruptcy Judge.

Debtor filed this action to determine the dischargeability of her Health Education Assistance Loans (HEAL loans). The issue at trial was whether nondischarge of Debtor's HEAL loans would be unconscionable under 42 U.S.C. § 294f(g) due to Debtor's mental and emotional disabilities which impair her ability to function and to earn a living. The court has jurisdiction over this matter and may enter final orders in this core proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(I).

## FACTS

Debtor has had a traumatic life and suffers from longstanding, serious mental and emotional disorders, including chronic depression and anxiety and panic disorders. The following facts are undisputed.

Debtor grew up in a dysfunctional household. Her mother was alcoholic and her father physically abused her. Family Services once removed her younger sister from the abusive household. Debtor's uncle sexually molested her when she was 12. After high school, Debtor enrolled in the University of Missouri–Kansas City School of Pharmacy and worked for her parents to help pay educational costs. At age 21, Debtor moved out of her parents' house and attempted to pay for her education by working at medical centers and as a cocktail server. The employer at the disco where she worked raped her at gunpoint. She was unable to keep up payments on her mobile home and utilities were shut off. Her parents hired a man to follow her in order to surveil her. Debtor was aware she was being followed, but did not know why and it frightened her. Because of these events Debtor's grades plummeted.

Debtor attempted suicide by overdosing on pills she obtained in pharmacy school. Consequently, the pharmacy school expelled her. She received neither an undergraduate nor a pharmacy degree. After expulsion from pharmacy school, Debtor was admitted to chiropractic college in 1979. In 1982–83, Debtor received three HEAL loans totalling $12,818.[1] In 1983 she married her husband and both graduated from chiropractic college.

The brief marriage was chaotic and marked by abuse. Debtor and her husband settled in New Orleans after moving nine times in two years. Debtor never practiced medicine, but instead acted as her husband's office manager. Debtor was unable to gain admission to practice in Louisiana despite taking the examination three times. Louisiana finally licensed Debtor after she threatened to sue, but Debtor never practiced chiropractic medicine, and while Debtor was in Louisiana, her Missouri license expired. Thus, since graduation 10 years ago, Debtor has never practiced chiropractic medicine and now is not licensed to.

Debtor's husband physically abused Debtor and their infant son. He would not permit Debtor to carry identification or money or to drive. Debtor stated she was a "basket case" and left her husband to return to Kansas City. In 1985, Debtor was divorced. She receives $250 per month as child support.

After her divorce, Debtor worked several jobs, primarily near-minimum wage positions. She worked in food service, as a receptionist, a secretary, an employment recruiter, a dispatcher, and as a person who quoted insurance rates over the telephone for $5.00 per hour. At each job, she was fired after a short period. Debtor sometimes drew unemployment benefits. She returned to school to study data entry. At the time of trial Debtor had been employed for 10 months as a computer programmer for Jackson County, Missouri at a salary of approximately $21,700 annually. This position is the highest paying, longest-held position she has ever had. However, it appears she has lost this job also.

A supervisor required her to work nights and weekends and sexually harassed Debtor until she was forced to enter the hospital for anxiety attacks. Debtor complained to the department director, who told Debtor she was a pretty girl and would have to live with harassment. The harassment ended after she filed a formal complaint, but Debtor suffered retaliation. After Debtor returned to work, the director reprimanded her, employees refused to speak to her and she suffered more anxiety attacks as a result. At the time of trial, Debtor had been on leave from her job, but leave time had run out and Debtor was uncertain whether she was still employed. She indicated she could not bear to return to the job. Debtor is seeking a new job but has not found one.

---

1. On July 16, 1991, a judgment for $34,422.82 was entered on the loans in U.S. District Court, Western District of Missouri. The judgment includes interest, attorney fees and late penalties. As of July 15, 1992 interest brought the total to $36,625.22.

The United States and Debtor jointly admitted various medical reports and records. Debtor's uncontroverted testimony and the medical reports, including the diagnoses of treating physicians Loutzenhiser, Borman and Mouse, reveal that she suffers from depression, an anxiety disorder, and panic attacks. Dr. Mouse indicated Debtor also complained of "shaking, headaches, weakness, and fainting ... 'episodes.'" Debtor has "episodes" where she becomes lightheaded or faints, sees stars, falls to the floor and has uncontrollable shaking and jerking similar to a seizure, has a severe headache, and feels as if she is dazed for several days afterward. These episodes have happened twice during the 10 months she has worked as a computer programmer. In addition, Dr. Mouse stated, "She said that she has a headache 'all day, everyday,' which feels like 'a little tiny explosion in my head.'"

During trial Debtor appeared to suffer from uncontrollable shaking and jerking, nervous tics and episodes of heavy weeping. Debtor appeared extremely agitated throughout the trial.

Debtor's testimony presented a litany of personal tragedies and traumas which are remarkable in number and severity. It could be argued that Debtor must have magnified the misfortunes in her life. After carefully observing Debtor, the court is convinced her mental and emotional disorders are real and not intentionally contrived. Debtor is without doubt one of the unhappiest persons with one of the most desolate views of the world and its relation to her that one could ever encounter. Even if there were an element of over-emphasis or magnification to Debtor's recitation of facts, which the court does not find, it seems that such "slant" is indicative of Debtor's chronic, severe depression and demonstrates the negative filter through which she views all her interactions with the world. The overall effect of debtor's testimony is that she sincerely feels acutely victimized at every turn and by just about every person with whom she has had any degree of interaction. The despairing and almost paranoid sounding feelings have virtually paralyzed debtor and left her unable to function on a day-to-day basis or to hold down a job. The effect of her perception of events is the same, whether her recitation of events is precise or the result of some degree of magnification.

The court has no doubt that Debtor suffers from severe, chronic depression and anxiety and panic disorders, and the court has no expectation that Debtor's condition will improve to any significant degree. Based on the evidence, the court concludes that debtor's emotional outlook is extraordinarily bleak and that her chronic emotional state does not give any indication of improvement in the foreseeable future. The court further finds that such conditions have rendered Debtor unable for all practical purposes to be a normal, functioning person in society; that Debtor is unable to maintain meaningful employment for more than a short period of time; and that Debtor is unable to earn sufficient income to support herself and her child and repay HEAL loans.

Debtor, aged 37, and her dependent son are physically healthy. She cohabits with her fiancé, who contributes nothing to her support. She pays as "rent" the mortgage payments on a house owned by her parents. The IRS has at times applied Debtor's income tax refunds to the HEAL debt. The Department of Health and Human Services granted Debtor three forbearances totaling 12 months. Debtor made some payments on her loans while she was married, but after her divorce, she was unable to make payments.

## DISCUSSION

Debtor contends that nondischarge of her HEAL loans would be unconscionable because she suffers from serious mental and emotional problems which are longstanding and permanent, and which render her unable to function and to earn an adequate living to support herself and her child and to repay the HEAL loans. The United States contends nondischarge would not be unconscionable because Debtor is physically healthy and has held jobs in the past.

Private lenders provide HEAL loans to students of health professions, and the Department of Health and Human Services guarantees them. HEAL loans have special dischargeability statutes, 42 U.S.C. § 294f(g), and a regulation, 42 C.F.R. § 60.-8(b)(5). *United States v. Wood,* 925 F.2d 1580, 1583 (7th Cir.1991); *In re Cleveland,* 89 B.R. 69, 71–72 (9th Cir.BAP 1988); *Matter of Johnson,* 787 F.2d 1179, 1182[5] (7th Cir.1986) (§ 294f(g) controls over 11 U.S.C. § 1328(a)); *United States v. Lee,* 89 B.R. 250, 253–56[1] (N.D.Ga.1987), *rev'g In re Lee,* 71 B.R. 833 (Bankr.N.D.Ga.1987) (holding that § 294f(g) does not govern HEAL discharges in Chapter 13); *In re Joyner,* 146 B.R. 232, 233[1] (Bankr.W.D.Mo.1992).

"Under section 294f(g) a HEAL loan is not dischargeable in bankruptcy unless: 1) five years have passed from the date that repayment begins; 2) the bankruptcy court finds that nondischarge would be unconscionable; and 3) the Secretary has waived certain rights." *Wood,* 925 F.2d at 1582[7]. The only issue herein is whether nondischarge of Debtor's loans would be unconscionable.

■ "The requirements of § 294f(g) clearly impose more stringent repayment obligations on HEAL borrowers than are imposed on other types of student borrowers. This distinction, however, is not surprising in that HEAL borrowers are entering the very lucrative health care profession." *Lee,* 89 B.R. at 255. Unconscionability is a higher standard than undue hardship, the standard that non-HEAL student loan debtors must prove under 11 U.S.C. § 523(a)(8). *Wood,* 925 F.2d at 1583; *In re Malloy,* 144 B.R. 38, 43[3] (Bankr.E.D.Va. 1992); *In re Quinn,* 102 B.R. 865, 867 (Bankr.M.D.Fla.1989); *In re Green,* 82 B.R. 955, 959[4] (Bankr.N.D.Ill.1988); *In re Hines,* 63 B.R. 731, 736[3] (Bankr.D.S.D. 1986).

■ Attempts to further define the standard have not succeeded in developing a straightforward test. As described in *Hines,* "unconscionability is likened to beauty in that it appeals to the senses and is found in the eyes of the beholder." Therefore, its "precise definition ... is bet-

ter left to the discretion of the Bankruptcy Judge." 63 B.R. at 736. *Webster's Third New International Dictionary,* 2486, defines unconscionable as "shockingly unfair, harsh, or unjust." *Malloy,* 144 B.R. at 43; *Quinn,* 102 B.R. at 867; *Green,* 82 B.R. at 959; *Hines,* 63 B.R. at 736; *See also In re Emnett,* 127 B.R. 599, 602 (Bankr.E.D.Ky. 1991) (similar definition in *Webster's New Collegiate Dictionary,* 1284).

■ In addition to the above guidelines, this court also looks to the following factors to analyze a HEAL debtor's factual situations: 1) income; 2) earning ability; 3) health; 4) educational background; 5) dependents, if any; 6) age; 7) accumulated wealth; and 8) professional degree. *Malloy,* 144 B.R. at 44; *Emnett,* 127 B.R. at 603; *Quinn,* 102 B.R. at 867.

Applying these eight factors to the present case, the evidence supports a finding that it would be unconscionable, in the sense that it would be shockingly harsh, not to discharge Debtor's HEAL loans. As to the first and second factors, if one looks at employment history and potential (and not just the most recent job, which Debtor appears to have lost), debtor's income has ranged from nonexistent to low, she has held primarily low-income jobs, and her earning ability is limited by her inability to hold a job for more than a short time. Her only other income is $250 per month child support. As to the third factor, Debtor's mental and emotional health are poor, and her depression and anxiety and panic disorders prevent her from functioning as a participating member of society and from maintaining employment. As noted earlier, there is no indication that these chronic conditions will improve, and the evidence indicates debtor's longstanding mental condition is one of despair. As to the fourth and eighth factors, relating to educational background and professional degree, Debtor has a chiropractic degree, but was refused a license three times in Louisiana, has not been licensed to practice since before 1985, and has never practiced chiropractic medicine. Her degree is now more than 10 years old, and it is unlikely that debtor would still be qualified to receive a

license in order to practice medicine. Moreover, after observing debtor during trial, the court does not believe she would be emotionally competent to withstand the rigors and stresses of a medical practice. As to the fifth and six factors, debtor is age 37, and she has a dependent eight year old son. As to the seventh factor, debtor has no assets of any value.

■ Health is a consideration in determining dischargeability of student loans. "Clearly the existence of any special expenses arising from such factors as physical or mental illness would constitute a 'unique' and 'extraordinary' circumstance." *In re Bryant,* 72 B.R. 913, 918 (Bankr. E.D.Pa.1987) (citing *In re Andrews,* 661 F.2d 702 (8th Cir.1981); *In re Binder,* 54 B.R. 736 (Bankr.D.N.D.1985); *In re Keenan,* 53 B.R. 913 (Bankr.D.Conn.1985); *In re Johnson,* 5 B.C.D. 532 (Bankr.E.D.Pa. 1979); *See also 1 Collier on Bankruptcy* ¶ 5.17[1] (quoting *Report of the Commission on the Bankruptcy Laws of the United States,* Part I, H.R.Doc. No. 137, 93rd Cong., 1st Sess. 176 (1973)).

*In re Binder,* 54 B.R. 736 (Bankr.D.N.D. 1985) is especially applicable to the present situation. *Binder,* 54 B.R. at 740[4], held that nondischarge of the debtor's student loans would be an undue hardship where debtor

> suffer[s] from a bipolar disorder as well as personality traits, either one of which or a combination of both have manifested themselves in a chronic inability to obtain and maintain gainful employment. *It is not the fact of the physical or mental condition that is critical but rather the effect that condition has upon the debtor's ability to obtain and maintain adequate financial resources during the foreseeable future.* (emphasis added).

■ In the present case, the court has found that debtor suffers from severe, chronic depression, anxiety disorder and panic disorder. The United States has suggested that debtor's conditions are either exaggerated or that they are not sufficiently serious to prevent a person from working. It is clear from her testimony that Debtor feels acutely victimized by most of the events in her life and that this percep-

tion of the world, which appears to be attendant to her severe depression, contributes to her inability to function. Thus, whether she has in her mind magnified the traumatic events is not critical. As noted in *Binder* what is critical is the effect the condition has upon debtor's ability to maintain adequate employment. The court finds the events, or debtor's perception of the events, and her mental condition have rendered her essentially unable to function and to earn an adequate living for herself and her son for any sustained period.

■ A medical condition that disables the debtor constitutes an extraordinary circumstance just the same as high medical bills resulting from that condition. In *Andrews,* 661 F.2d at 704–05[2], the Eighth Circuit held the bankruptcy court properly considered the debtor's disease as a factor in the determination of undue hardship under § 523(a)(8). "Serious illness all too often requires expensive treatment and medication. Serious illness may affect an individual's ability to work." *Id.* at 705.

The chronic depression, anxiety disorder and panic disorder affect and will continue to affect Debtor's ability to maintain employment. None of Debtor's jobs have been related to her degree subject, and almost all have been at low or near-minimum wage. She is unable to maintain employment for any period of time and she has never and will never be able to practice chiropractic medicine.

The United States relies on *In re Hines,* 63 B.R. 731 (Bankr.D.S.D.1986). *Hines* denied discharge of HEAL loans because the debtor was "admittedly in good health," and had a college degree, so nondischarge of a HEAL loan would not be unconscionable. 63 B.R. at 733, 737. The United States argues that Debtor is in good physical health, but fails to address the effect of Debtor's mental and emotional disabilities on the unconscionability standard. The United States offered no evidence contradicting Debtor's testimony and it jointly admitted Debtor's medical records.

The government cites *In re Green,* 82 B.R. 955 (Bankr.N.D.Ill.1988), because the

financial circumstances resembled the present case. *Green* is also distinguishable. Green was both physically and mentally healthy. Again, the United States overlooks the significance of Debtor's mental illness, which renders her unable to function on a day-to-day basis and prevents her from maintaining employment for any significant time.

The government's reliance on *In re Gearhart*, 94 B.R. 392, 393 (Bankr.W.D.Pa. 1989), is also misplaced. *Gearhart* held that failure to discharge a student loan was not an undue hardship for a debtor who "complained that her nerves were 'shot' and that she couldn't react favorably to a pressure situation." The evidence herein demonstrates that Debtor suffers from a longstanding mental illness, not "shot" nerves. Furthermore, the judge in *Gearhart* did not believe debtor's assertions that her nerves made her unable to return to her occupation. *Id.*

Although for 10 months debtor earned a salary at an annual rate of $21,700, the evidence indicates such employment has ended or will likely end because she has either been terminated for exceeding her leave time, or she cannot endure returning to the work environment she described as harassing, retaliatory and hostile. "An examination of the debtor's financial situation, present and future, could reveal the existence of other extraordinary circumstances. This could include an examination of the debtor's employment history and possible prospects that income will decrease in the future." *Bryant*, 72 B.R. at 918 (citing *In re Frech*, 62 B.R. 235 (Bankr. D.Minn.1986); *In re Marion*, 61 B.R. 815 (Bankr.W.D.Pa.1986); *In re Brunner*, 46 B.R. 752 (S.D.N.Y.1985); *In re Bennett*, 38 B.R. 392 (Bankr.W.D.Mo.1984); *In re Bell*, 5 B.R. 461 (Bankr.N.D.Ga.1980); *In re Clay*, 12 B.R. 251 (Bankr.N.D.Iowa 1981); *In re Johnson*, 5 B.C.D. 532 (Bankr. E.D.Pa.1979)).

Courts are reluctant to discharge student loans where debtors have made no attempt to pay before filing bankruptcy. *See In re Dunevitz*, 94 B.R. 190, 192 (Bankr.D.Colo.1988); *In re Littell*, 6 B.R. 85, 89 (Bankr.D.Or.1980). Debtor attempted to pay her HEAL loans while she was married. Debtor obtained forbearances so she could regroup after her divorce and begin repaying. She was never able to accomplish her goal, but only fell further behind.

"Clear and important policy statements were made by Congress in drafting the HEAL law and when it purposely restricted the discharge of these particular student loans." *Dunevitz*, 94 B.R. at 192. Debtor's situation falls within the circumstances of unconscionability contemplated by that Congressional policy.

### CONCLUSION

"[W]hile it is perhaps human nature to be optimistic about the future, in general, present and past performance is the best indication of a debtor's future capabilities." *Bryant*, 72 B.R. at 919. Debtor has longstanding mental and emotional conditions that the evidence shows are likely to be permanent. These conditions render her incapable of functioning in a manner to enable her to maintain a job. Therefore, she will not be able to work to earn sufficient funds to support herself and her child and to repay the HEAL loans. It would be unduly harsh and unconscionable not to discharge the HEAL loans. Accordingly, it is hereby

**ORDERED, ADJUDGED AND DE-CREED** that failure to discharge Debtor's HEAL loans would be unconscionable, and judgment is entered in favor of Debtor Ruth Ann Kline discharging Debtor from liability on HEAL loans.