**In re Virgil Russell STEUBER, Debtor.**

**Virgil Russell STEUBER, Plaintiff,**

**v.**

**UNITED STATES DEPARTMENT OF EDUCATION, DIVISION OF FISCAL SERVICES, and Health Resources and Services, Defendants.**

**Bankruptcy No. 95–60111–S.
Adv. No. 95–6072–S.**

United States Bankruptcy Court,
W.D. Missouri, S.D.

Sept. 6, 1996.

James R. Doran, Springfield, MO, for Plaintiff.

Judith M. Strong, Assistant U.S. Attorney, Kansas City, MO, for Defendants.

## MEMORANDUM OPINION AND ORDER

KAREN M. SEE, Bankruptcy Judge.

Plaintiff, a Chapter 7 debtor, filed this action seeking discharge of Health Education Assistance Loans ("HEAL loans") on the basis that nondischarge is unconscionable under 42 U.S.C. § 292f(g) (1992). Defendant counterclaimed for a judgment of nondischargeability. Appearances at trial were: debtor in person and by counsel James Doran, and the United States by Judith Strong, Assistant U.S. Attorney. Debtor failed to meet the high standard for discharge under § 292f(g) and therefore, the HEAL loans are nondischargeable. The court has jurisdiction over this core proceeding and may enter final orders pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A), (B), (I), (M) and (O).

### FACTS

From December, 1983 through February, 1986, Debtor Virgil Steuber was issued five loans from Bank One, Columbus, NA, under the Health Education Assistance Loan ("HEAL") program, totaling $32,374, as authorized by 42 U.S.C. § 292f (formerly § 294f) and 42 C.F.R. Part 60. The loans were guaranteed by the Department of Health and Human Services. Debtor executed promissory notes with variable interest rates and with repayment to begin the first day of the tenth month after he ceased full-time study. Debtor attended Cleveland Chiropractic College from 1983 until graduation in 1986. After a deferment on payment, repayment of the HEAL loans was to begin November 15, 1987. Debtor never made any payment. The notes were sold to the Student Loan Marketing Association, which declared him in default and on July 5, 1988 obtained payment of $46,411 from the Department of Health and Human Services under its guaranty. The Department made demands, but Debtor never paid.

In April, 1992 the United States filed suit in U.S. District Court, Western District of Missouri, for $66,144.01 plus interest. On November 2, 1992, Debtor entered into a Judgment by Consent in the amount of $68,909.09 plus accrued interest of $2,507.94, for a total of $71,416.93, plus post-judgment in-

terest of 3.13% per annum. Debtor failed to make any payments on this judgment.

On October 25, 1994, Debtor filed a Chapter 7 petition. He withdrew his case but refiled on February 15, 1995. A discharge was entered June 1, 1995, and approximately $200,000.00 of $280,000.00 in unsecured debts were discharged. On November 29, 1995, Debtor filed a complaint to determine dischargeability of HEAL Loans, claiming that failure to discharge the HEAL debt would be unconscionable. Debtor's employment history indicates he was employed on two occasions as a chiropractor. First he practiced in another doctor's office, which he voluntarily left after an alleged ethical disagreement with the other doctor. Debtor then maintained his own practice for six years, apparently as a joint business with his current wife, who donated approximately $100,000 of her own funds and worked as the office manager. The business ultimately failed.

Debtor has been unemployed for a long time. He testified he has applied for numerous jobs and produced some applications and rejection letters. Debtor said the rejections arose from over-qualification, but no evidence supports the assertion. Most were government jobs for which he was under-qualified or unqualified, including: 1) a job with the Veterans' Administration for which he failed to demonstrate necessary typing skills; and 2) a job as an air quality control specialist for Springfield, Missouri for which he lacked mandatory specialized training. Debtor has 11 years experience in the military, but is beyond re-enlistment age.

Debtor's employment opportunities are not limited by poor health. He failed to present any evidence of debilitating medical conditions. Debtor testified only that this situation "stressed him out." One alleged source of stress stemmed from inability to purchase goods for his children, but Debtor also acknowledged that he has not remained in close contact with them.

Debtor's emotional state has not left him devoid of financial support. His wife has an independent income, a home and two farms. She contributes to Debtor's support and in the past donated money to a marital business, as noted above. Debtor has also earned income as a chiropractor. During the six years he owned a practice, he drew at least $10,000 per year from the business. With one exception, Debtor has not tried to locate another chiropractic job.

Although Debtor has not found desirable employment, there is no evidence he is unemployable. In fact, a state judge in a dissolution of marriage proceeding in Colorado earlier determined that his potential income was at least $1,000 a month. Debtor has earned income, as evidenced by his 1992 and 1993 tax returns, showing $19,506 in 1992 and $18,742 in 1993.

### DISCUSSION

■ The sole issue is whether declaring the judgment on Debtor's HEAL loans nondischargeable is unconscionable pursuant to 42 U.S.C. § 292f(g) (1992).[1] § 292f(g) provides as follows:

> A debt which is a loan insured under the authority of this subpart may be released by a discharge in bankruptcy under any chapter of Title 11 only if such discharge is granted—
>
> (1) after the expiration of the 7–year period beginning on the first date, exclusive of any period after such date in which the obligation to pay installments on the loan is suspended;
>
> (2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable; and
>
> (3) upon the condition that the Secretary shall not have waived the Secretary's rights to apply subsection (f) of this section to the borrower and the discharged debt.

■ Debtor, the party seeking .discharge, has the burden to prove that failure to enter such a judgment would be unconscionable. *United States v. Wood*, 925 F.2d 1580, 1583 (7th Cir.1991). Debtor asserts nondischarge of his HEAL loans would be unconscionable

---

1. 42 U.S.C. § 292f(g) was formerly set forth at 42 U.S.C. § 294f(g). The section was renumbered by the Health Professions Education Extension Amendments of 1992, P.L. 102–408.

because of his inability to find a job and mental stress which renders him incapable of earning a living. Conversely, the United States contends nondischarge would not be unconscionable because Debtor is physically healthy, not mentally impaired, and in the past has held jobs, including positions as a chiropractor.

Courts have held that a determination of "unconscionability" in connection with a HEAL loan involves a higher standard than "undue hardship" applied under 11 U.S.C. § 523(a)(8). *See, e.g., Wood,* 925 F.2d at 1583; *Kline v. United States,* 155 B.R. 762, 765 (Bankr.W.D.Mo.1993); *In re Emnett,* 127 B.R. 599, 602 (Bankr.E.D.Ky.1991). The standard has been defined as "shockingly unfair, harsh or unjust, [citations omitted]" *Kline,* 155 B.R. at 766, and "conduct that is monstrously harsh and shocking to the conscience." *In re Hines,* 63 B.R. 731, 736 (Bankr.D.S.D.1986). Additionally, courts have required a "certainty of hopelessness that future payments cannot be made, based on the presence of unique or extraordinary circumstances which would render it unlikely that the debtor ever would be able to honor his obligations." *In re Ballard,* 60 B.R. 673, 674–675 (Bankr.W.D.Va.1983). Obviously, the standard is not easily met. In fact, a review of the case law indicates that only 2 courts have discharged HEAL loans under the unconscionability standard of § 292f(g)(2). *See, In re Nelson,* 183 B.R. 972 (Bankr.S.D.Fla.1995); *Kline,* 155 B.R. 762.

█ Keeping these standards of unconscionability in mind, a court looks at all the facts and circumstances of an individual case and examines eight factors in determining discharge under 42 U.S.C. § 292f(g): 1) income; 2) earning ability; 3) health; 4) educational background; 5) dependents, if any; 6) age; 7) accumulated wealth; and 8) professional degree. *Kline,* 155 B.R. at 766; *In re Malloy,* 155 B.R. 940, 945 (Bankr.E.D.Va. 1993); *Emnett,* 127 B.R. at 603. Analysis of the cases is instructive in determining whether nondischarge is unconscionable in the present case.

In *Hines,* 63 B.R. at 733, the court refused to discharge a debtor who failed to graduate with a dental degree and earned an average of only $2,000 per year at various jobs, in-cluding positions at a nursery, as a chimney sweep, a bartender and a satellite dish salesman. The debtor was pessimistic about future earnings. The court found that neither "underemployment" nor failure to obtain credentials to enable the debtor to work as a dentist met the "unconscionability" test. *Id.* at 737.

In *Emnett,* 127 B.R. at 601–604, the debtor had been forced to give up a dentistry practice due to arthritis in his hands. He had been unsuccessful in a number of business ventures before achieving a measure of success as a realtor yet he had no accumulated wealth. Debtor's wife was in good health and operated a tanning salon in the couple's home. Despite these facts, the debtor had made only token payments on his HEAL obligation and his non-HEAL student loans. While acknowledging debtor's inability to practice dentistry, the court noted debtor's real estate success as well as the possibility of using his education in a related field and held that nondischarge of the HEAL loans was not unconscionable.

By contrast, the facts in *Kline,* 155 B.R. 762, warranted a determination that nondischarge of the debtor's HEAL loans would be unconscionable. In *Kline,* which also involved a chiropractor, the debtor suffered from a myriad of dire personal tragedies and financial crises. The evidence was undisputed and the defendant government stipulated to medical records indicating that Debtor suffered from severe clinical depression. Debtor's past included continual and severe physical and mental abuse by her parents and spouse, incidents of sexual assault perpetrated by an uncle and an employer and other sexual harassment in the workplace. *Id.* Medical evidence showed that she suffered from frequent seizure-like states which included fainting, seeing stars, uncontrollable jerking and contractions, and passing out on the floor. Her employment history indicated she had been unable to ever maintain a job in any field, despite having a young child to support. Debtor only held a license in chiropractic medicine for a brief period of time and never practiced. *Id.* at 764.

This court made the following observations in *Kline* regarding the debtor's situation and future earning potential:

> Debtor's testimony presented a litany of personal tragedies and traumas which are remarkable in number and severity.... Debtor is without doubt one of the unhappiest persons with one of the most desolate views of the world and its relation to her that one could ever encounter. Even if there were an element of over-emphasis or magnification to Debtor's recitation of facts, which the court does not find, it seems that such "slant" is indicative of Debtor's chronic, severe depression and demonstrated the negative filter through which she views all her interactions with the world.... The despairing and almost paranoid sounding feelings have virtually paralyzed debtor and left her unable to function on a day-to-day basis or to hold down a job.... The court has no doubt that Debtor suffers from severe, chronic depression and anxiety and panic disorders, and the court has no expectation that Debtor's condition will improve to any significant degree.... The court further finds that such conditions have rendered Debtor unable for all practical purposes to be a normal, functioning person in society; that Debtor is unable to maintain meaningful employment for more than a short period of time; and that Debtor is unable to earn sufficient income to support herself and her child and repay HEAL loans.

*Kline,* 155 B.R. at 765. Accordingly, the HEAL loans of the debtor in *Kline* were discharged.

In the instant case, it cannot be seriously maintained that it would be "shockingly unfair" or "monstrously harsh or shocking to the conscience" to require an employable, educated, healthy person like Virgil Steuber to fulfill his obligation to pay a HEAL education loan. Additionally, analysis of the eight factors courts examine under 42 U.S.C. § 292f(g) do not support a finding of dischargeability in this case. First, potential income is available because Debtor is employable, either as a chiropractor or otherwise. Although Debtor has not found desirable employment, there is no evidence that

he is unemployable. As previously stated, a Colorado court in a dissolution of marriage proceeding previously determined that Debtor's potential income was at least $1,000 a month. Additionally, Debtor has earned income, as evidenced by tax returns which show Debtor earned $19,506 in 1992 and $18,742 in 1993.

As a person with a professional degree and a chiropractic license, Debtor has earning potential, demonstrated by the fact that he was able to take $10,000 per year from his own practice for six years. Furthermore, Debtor's educational background indicates that he is capable of earning significant income. He obtained his chiropractic degree in 1986, and is not currently prohibited from putting that degree to use. This ability is in direct contrast to *Kline,* where the debtor only briefly held a chiropractic license and her ability to earn income was paralyzed by overwhelming mental and physical illness.

Debtor has not presented any evidence that his health prevents him from obtaining employment. There is no evidence substantiating Debtor's claim that he is "stressed out" or that his emotional state has left him devoid of all income. In any event, being "stressed out" in itself is not sufficient mental impairment to warrant dischargeability. *Kline,* 155 B.R. at 768.

Debtor has three children, ages 25, 16 and 12. Debtor testified that he owes child support for two of them and that he has not paid it for a long time. Debtor alleged that some of his stress stemmed from inability to purchase goods for his children, but that rationalization is flimsy in light of his admission that he does not remain in close contact with his children. This factor is not persuasive in light of the overwhelming evidence regarding Debtor's employability and earning potential.

Debtor's age is 45, which is not too old to find employment. In addition, accumulated wealth is held in Debtor's wife's name. Mrs. Steuber has independent income, owns a home and two farms, and contributes to Debtor's personal expenses. Moreover, her assets were previously donated to the marriage when she donated $100,000 of her own funds in the chiropractic office where they both worked. It appears possible that under

Missouri law, at least some of her assets have become marital assets by donation to the marriage. See Mo.Stat.Ann. § 452.330(2), (3) (1988); *Summerville v. Summerville,* 869 S.W.2d 79, 85 (Mo.App. 1993).

Finally, Debtor's credibility is questionable. Debtor exhibited an inability to answer questions posed to him by the United States. When queried about his loans, Debtor either failed to comprehend the questions and gave evasive answers or simply claimed he could not recall. The memory loss is inconsistent with earlier, more detailed answers concerning obscure items about the loans during direct examination by his own lawyer. In general, the Debtor's answers at trial were not straightforward. In addition, in the proceeding for dissolution of a previous marriage in a Colorado court, the judge found that Debtor had been less than candid with the court in stating his income.

The evidence does not support a conclusion that Debtor is incapable of ever obtaining gainful employment or earning enough to pay on his HEAL loans. Nor does the evidence indicate that nondischarge of the HEAL loans is so shockingly unfair or monstrously harsh to the conscience as to be unconscionable. Debtor cannot satisfy the unconscionability prong of § 292f(g).

It is **ORDERED, ADJUDGED** and **DECREED** as follows:

1. On Plaintiff/Debtor Virgil Russell Steuber's complaint, judgment is entered against Debtor and for Defendants United States of America, Division of Fiscal Services, Health Resources and Services Administration and the Department of Education.

2. On Defendants' counterclaim, judgment is entered for Defendants and against Debtor.

3. The judgment entered in District Court on Debtors' HEAL loans in the amount of $71,416.93, plus costs and post-judgment interest accruing since November 2, 1992 at 3.13% per annum, is not discharged in this bankruptcy case, and shall continue to accrue interest at 3.13 percent.

Costs herein are awarded to Defendants and against Debtor.