**In re Scott B. PINKHAM, Debtor.**

**Scott B. PINKHAM, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 97–47679–293.**
**Adversary No. 97–4300–293.**

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

May 1, 1998.

Neil Weintraub, St. Louis, MO, for Debtor.

Wesley D. Wedemeyer, Asst. U.S. Atty., St. Louis, MO.

Leslie A. Davis, Chapter 7 Trustee, Clayton, MO.

### MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I), which the Court may hear and determine.

### PROCEDURAL BACKGROUND

1. Scott J. Pinkham, Debtor, filed a petition seeking relief under Chapter 7 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) on August 8, 1997.

2. On December 17, 1997, Debtor initiated this adversary complaint seeking to discharge what he pleaded was the $300,000.00 claim of the Defendant, United States of America. Debtor maintained that the dis-

chargeability of Defendant's claim, which was based upon a loan the Government insured under its Health Education Assistance Loan program (HEAL), is governed by 42 U.S.C. § 292f(g).[1] Debtor asserted that the factual circumstances of his case satisfy the conditions to discharge of a HEAL loan set forth in 42 U.S.C. §§ 292f(g)(1), (2) and (3).

3. The United States answered Debtor's adversary complaint on February 11, 1998. In its answer, Defendant denied that the facts in Debtor's case satisfy the conditions to discharge a HEAL. The Government also refuted Debtor's assertion that its claim was valued at $300,000.00, stating that its claim was based upon two judgments totaling $132,886.79, inclusive of interest through December 27, 1997.

4. On March 6, 1998, Defendant filed its Motion for Summary Judgment supported by a Memorandum of Law. In its Memorandum, Defendant recounted that it holds two judgments against Debtor totaling $132,886.79. The Government maintains that to meet section 292f(g)(2)'s standard of "unconscionable," the nondischarge of a debt must be "shockingly unfair, harsh or unjust, excessive, unreasonable or outrageous." Defendant argues that, even taking the facts alleged by Debtor as true, denying a discharge of its claim does not lead to an unconscionable result. Defendant maintains that section 292f(g)(2)'s "unconscionability" standard for discharge of a HEAL loan is higher than the Bankruptcy Code's "undue hardship" standard by which the determination of the dischargeability of other student loans is measured.

### FACTUAL BACKGROUND

When deciding a motion for summary judgment, a court must view the facts in the light most favorable to the non-moving party.

*Rabushka, ex rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997). For purposes of deciding this Motion, the Court accepts as true the following facts:

1. Debtor borrowed money under the HEAL program to obtain chiropractic schooling.

2. For five years, Debtor attempted to build a chiropractic practice.

3. Unable to build his chiropractic practice, Debtor accepted employment as a high school science teacher.

4. Debtor currently earns approximately $40,000.00 a year from teaching.

5. Debtor does not anticipate earning significantly more money in the foreseeable future.

6. Debtor supports his wife, a fifteen-year-old son, and an eleven-year-old son.

7. Debtor is 43 years old.

8. More than seven years has elapsed, exclusive of any deferments, since Debtor was first obligated to make payments on Defendant's loan.

9. The Secretary of Health and Human Services has not waived her right to apply subsection f of 42 U.S.C. § 292 to Debtor.

### DISCUSSION

A court may grant summary judgment only if a review of the full record reveals that there is no material issue of fact, and the moving party is entitled to judgment as a matter of law. *Opus Corp. v. International Business Machines,* 141 F.3d 1261, 1264 (8th Cir.1998) (citations omitted). The grant of summary judgment does not, however, mean that the parties have been "denied their day in court" or been barred from "telling their stories." To the contrary, the court thoroughly evaluates the entire record, including

---

1. 42 U.S.C. § 292f provides:

(g) Conditions for discharge in bankruptcy

A debt which is a loan insured under the authority of this subpart may be released by a discharge in bankruptcy under any chapter of Title 11, only if such discharge is granted—

(1) after the expiration of the seven-year period beginning on the first date repayment of such loan is required, exclusive of any period after such date in which the obligation to pay installments on the loan is suspended;

(2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable; and

(3) upon the condition that the Secretary [of Health and Human Services] shall not have waived the Secretary's rights to apply subsection (f) of this section to the borrower and the discharged debt.

the pleadings on file, and any affidavits the parties have submitted to determine:

    a.  whether a factual dispute exists;

    b.  whether any factual disputes that exist are material to the outcome of the case; and

    c.  if no material factual dispute exists, whether the moving party is entitled to judgment under the law.

In this case, the Court has considered the entire record, including the parties' factual assertions and legal arguments, and concluded that Defendant is entitled to summary judgment.

In arguing that it would be unconscionable not to discharge the debt he owes Defendant, Debtor relies on *Roa–Moreno v. U.S. Dept. of Health and Human Services*, 208 B.R. 488 (Bankr.C.D.Cal.1997). Essentially, Debtor argues that not discharging his indebtedness to Defendant would be unconscionable under the standard set forth in *Roa–Moreno* because he has limited income on which he must support a four-person household. Further, Debtor argues that because the debt he owes Defendant is three times his annual income, he will never be able to repay it and that not discharging it would bar him from accumulating property during his lifetime.

The debtor in *Roa–Moreno* sought to discharge $33,893.36 of HEAL loans she owed to the United States Department of Health and Human Services. *Id.* at 490. Both parties moved for summary judgment. *Id.* The *Roa–Moreno* court began its analysis of the parties' motions by considering whether it would be unconscionable to refuse to discharge Roa–Moreno's HEAL loan debt by defining unconscionable. *Id.* at 493. The court rejected the definition of unconscionable provided by Black's Law Dictionary because it "defines unconscionable in the context of contract law." *Id.* That court next noted that most courts applying section 292f(g)(2) define unconscionable as "shockingly unfair or unjust," the definition found in Webster's Ninth New Collegiate Dictionary.[2] *Id.* Apparently unsatisfied with Web-

ster's definition because it lacked an objective component, the court expressed how it was "troubled" that the term unconscionable in section 292f(g) was "vague and undefined." *Id.*

The *Roa–Moreno* court looked to a list of eight factors the Bankruptcy Court for the Middle District of Florida purportedly had distilled from cases that had considered the dischargeability of HEAL loans. *Id.* (citing *In re Quinn*, 102 B.R. 865, 866 (Bankr. M.D.Fla.1989)). The *Roa–Moreno* court, unlike the *In re Quinn* court, rejected the idea that "unconscionability" standard of 42 U.S.C. § 292f(g) is a higher standard than the "undue hardship" standard for discharge of non-HEAL student loans found in section 523(a)(8) of the Bankruptcy Code. Ultimately, the *Roa–Moreno* court endorsed a two-step procedure for determining whether the non-discharge of a debt would be unconscionable. First, the court would determine whether the debtor's income and resources place debtor's household below the Poverty Guidelines published annually by the United States Bureau of Census. *Id.* Second, if debtor's household income and resources fall below the Poverty Guidelines, the court should apply the factors outlined in *In re Quinn*. *Id.* The factors outlined by the *In re Quinn* court are as follows:

1.  debtor's income

2.  debtor's earning

3.  debtor's health

4.  whether debtor has accumulated wealth

5.  whether debtor has dependants

6.  debtor's age

7.  debtor's educational background

8.  whether debtor obtained a professional degree.

*In re Quinn*, 102 B.R. at 867.

The *Roa–Moreno* court ultimately denied the Government's motion, finding that there were material issues of fact that precluded the entry of summary judgment. *Id.* at 494.

**2.** The *Roa–Moreno* court was applying 42 U.S.C. § 294f(g), the predecessor to 42 U.S.C. § 292f(g), because it was in effect in 1989 when Debtor filed her bankruptcy petition. 208 B.R. at 490.

The language used in subsection 294f(g)(2) is identical to the language used in subsection 292f(g)(2).

■ The *Roa–Moreno* court, however, represents a minority position. As that court recognized, the majority of courts that have compared the standard for discharge under 42 U.S.C. § 292f(g) with the standard for discharge of non-HEAL student loans under section 523(a)(8) of the Bankruptcy Code have determined that "unconscionable" is a significantly higher burden than "undue hardship." *See Rice v. United States (In re Rice)*, 78 F.3d 1144, 1148 (6th Cir.1996); *In re Malloy*, 155 B.R. 940, 945 (E.D.Va.1993), aff'd, 23 F.3d 402 (4th Cir.1994) (Table); *Steuber v. United States Dept. of Education ( In re Steuber)*, 200 B.R. 31, 34 (Bankr. W.D.Mo.1996); *Hines v. United States (In re Hines)*, 63 B.R. 731, 736 (Bankr.D.S.D.1986). This Court believes the majority view is better reasoned and will adhere to it.

■ The Court adopts the reasoning of the majority of courts and finds that unconscionable, as used in 42 U.S.C. § 292f(g)(2), means "shockingly unfair, harsh or unjust." *See In re Rice*, 78 F.3d at 1144 (Sixth Circuit finding that "congress intended to adopt the ordinary usage of the term [unconscionable] as 'excessive, exorbitant,' 'lying outside the limits of what is reasonable or acceptable,' 'shockingly unfair, harsh, or unjust,' or 'outrageous.' "); *Matthews v. Pineo*, 19 F.3d 121, 124 (3rd Cir.1994) (to be "unconscionable" an option must be "shockingly unfair, harsh, or unjust' or 'outrageous' "). Unconscionability is an "extreme" standard, *see* 78 F.3d at 1149, and the Court has only found two cases in which debtors have prevailed under 42 U.S.C. § 292f(g).

One case where a court concluded that not discharging a debtor's HEAL obligations would be unconscionable is *Kline v. United States (In re Kline)*, 155 B.R. 762 (Bankr. W.D.Mo.1993). Before filing her bankruptcy, Kline had incurred HEAL loan debt when she attended pharmacy college. Kline, however, did not receive her degree. *Id.* at 763. The court recounted in great detail the tragedies that had befallen Kline since her youth, including: repeated encounters with people who physically and sexually abused her; an abusive marriage; and an attempted suicide. *Id.* As a result of her experiences, Kline was clinically depressed and suffered involuntary

tics and seizures. *Id.* The court characterized the "litany of personal tragedies and traumas" Kline had endured as "remarkable in number and severity" and concluded that they had left her "virtually paralyzed" and "unable to function on a day-to-day basis or to hold down a job." *Id.* at 764. When she filed for bankruptcy protection, Kline had a dependant son, and lived with her fiance who did not contribute to her support. *Id.* After considering the eight factors the *In re Quinn* court had outlined, the *In re Kline* court concluded that not discharging the $12,818.00 of HEAL debt Kline owed would be unconscionable "in the sense that it would be shockingly harsh." 155 B.R. at 766.

The second case this Court has located in which it was held that not discharging a debtor's HEAL loans would be unconscionable is *Nelson v. Pennsylvania Higher Educ. Assistance Agency (In re Nelson)*, 183 B.R. 972 (Bankr.S.D.Fla.1995). When she filed her Chapter 13 bankruptcy, Nelson was 35 years old. *Id.* at 974. Nelson had accepted two HEAL loans, one in 1986 when she enrolled in medical school and another in 1988 which paid for the fall semester of 1987's school year. *Id.* During the 1987 fall semester, Nelson suffered a nervous breakdown and was dismissed from medical school. *Id.* During the time between her dismissal from medical school and her bankruptcy filing, Nelson unsuccessfully "tried to return to undergraduate studies and get her life back together; however, this was to no avail, due to her inability to focus and concentrate." *Id.* at 975. A psychiatrist testified that Nelson had developed "Recurrent Major Depression with Psychotic Features, and slight Paranoia" and that her condition was unlikely to improve. *Id.* The lender on Nelson's HEAL loans contested the dischargeability of the $26,396.86 balance that remained after Nelson's plan was completed. *Id.*

The *In re Nelson* court utilized the eight factors cited by the *In re Quinn* court in analyzing whether it would be unconscionable to not discharge the balance remaining on Nelson's HEAL obligations. *Id.* at 977. The court noted that Nelson earned $9.41 an hour as a phlebotomist and had never earned more than $19,000.00 in a year. *Id.* The

court found that Nelson was "unable to financially support herself, and if she earned more money, she would only have to pay her true share of her medical and psychiatric bills" which her psychiatrist "voluntarily reduce[d] ... from $750 per month to $250 per month." *Id.* The court characterized Nelson's health as "less than average" and found that there was no indication that her condition would improve. *Id.* Regarding Nelson's education, the court found that because her undergraduate degree in microbiology was ten years old, it was of little use to Nelson. *Id.* The court also noted that Nelson had never obtained her professional degree. *Id.* The court did not place much value on the fact that Nelson had accumulated a modest savings of $16,000.00 and owned a joint tenancy interest in her mother's house. *Id.* at 978. The court concluded that not discharging the balance of Nelson's HEAL loans would be unconscionable. *Id.*

Pinkham's case resembles a recent case decided by the United States Bankruptcy Court for the Western District of Missouri more than it resembles those of Kline and Nelson. *See Steuber v. United States Dept. of Education (In re Steuber),* 200 B.R. 31 (Bankr.W.D.Mo.1996). Steuber, the debtor, had taken out HEAL loans while attending chiropractic college. *Id.* at 31. Before filing bankruptcy, Steuber defaulted on his loan payments and a consent judgment of $68,-909.09 had been entered against him. *Id.* Steuber was 45 years old and, other than being "stressed out," was in good health when he filed bankruptcy. *Id.* at 35. Steuber alleged that he had been unable pay child support for two of his children, ages 16 and 12. *Id.* Although unemployed, Steuber had been found, during dissolution of marriage proceedings, to be capable of earning at least $1,000.00 a month. *Id.* at 32. The *In re Steuber* court concluded that "the evidence [does not] indicate that nondischarge of [Steuber's] HEAL loans is so shockingly unfair or monstrously harsh to the conscience as to be unconscionable." *Id.* at 36.

■ Applying the *In re Quinn* factors to Pinkham's case demonstrates that it would not be unconscionable to require him to repay the HEAL loan obligation he incurred. Pinkham earns $40,000.00 a year and could supplement his earnings with seasonal employment. *See In re Rice,* 78 F.3d at 1149 (court should consider whether debtor has maximized his income through secondary or seasonal employment). Debtor, at 43 years of age, is a relatively young man. Debtor has not argued that his health is less than average. Unlike Nelson and Kline, Pinkham obtained his professional degree. Debtor supports two sons and a wife but has not argued that they are unable to contribute financially toward their support. *In re Rice,* 78 F.3d at 1149 (court should consider whether dependants can contribute to their own support in determining whether not discharging of a HEAL loan obligation is unconscionable). The Court holds that no material issue of fact exists regarding whether refusing to discharge Debtor's HEAL loan obligation would be unconscionable. The Court further holds that not discharging Debtor's HEAL loan obligation does not lead to an unconscionable result, and that Debtor's obligation to Defendant, therefore, is nondischargeable.

■ Alternatively, even if the Court accepted Debtor's invitation to follow the reasoning of the *Roa–Moreno* court, Debtor could not prevail. As the Court summarized above, the *Roa–Moreno* court endorsed a two-step analysis in which the Debtor first has to demonstrate that his household is below the Poverty Guidelines published by the Office of the Secretary of Health and Human Services. Debtor cannot satisfy this requirement. In his Complaint and Response to Defendant's Motion for Summary Judgment, Debtor states that he earns approximately $40,000.00 a year as a teacher and supports a family of four. The Poverty Guidelines, as amended in February of this year, set the Poverty Guideline for a family of four at $16,450.00. *See* Annual update of the HHS Poverty Guidelines, 63 Fed.Reg. 9235, 9236 (1998). Debtor's income far exceeds $16,450.00 and, therefore, he cannot demonstrate under the test favored by the *Roa–Moreno* court that not discharging the debt representing the debt owed to Defendant would be unconscionable.