**In re John F. DODGE, Bankrupt.**

**Bankruptcy No. 78–330–BK–CA–B.**

United States Bankruptcy Court,
S.D. Florida.

Aug. 30, 1989.

See also, Bkrtcy., 101 B.R. 800.

Douglass E. Wendel, Palm Beach, Fla., trustee.

Theodore Jewell, Palm Beach, Fla., Edward S. Rudofsky, Zane & Teitler, New York City, for trustee.

Sylvan B. Burdick, Burdick & Davis, West Palm Beach, Fla., for John Dodge.

Madelyn B. Riggle on behalf of Ralph G. Riggle, West Palm Beach, Fla., Chapter XII Trustee.

Augustin J. San Filippo, P.C., New York City.

Alan B. Miller, Weil, Gotshal & Manges, New York City.

Abady & Jaffe, New York City, for the Estate of Paul Weiden and the Adm'r of Carol M. Crosswell.

**ORDER ON FEE APPLICATIONS**

THOMAS C. BRITTON, Chief Judge.

■ This chapter VII liquidation case began 11 years ago, in March 1978, under the Act of 1898.[1] All creditors have been paid in full, with interest to the extent allowed under the Act (CP 660). *After payment of allowed administrative expenses,* the balance on hand of $644,319, is payable to Dodge. *In re United Metal Fabricators, Inc.,* 387 F.Supp. 407, 408 (N.D.Tex.1975).

The largest unencumbered asset recovered for this estate has been a $775,000 settlement from a New York bank for alleged mismanagement of Dodge's prepetition trust.

The final meeting of creditors was held August 15, at which time seven fee applications, which total $606,635, were heard. This Order addresses those applications.

Dodge, therefore, is the only party really interested in curbing the administrative expenses. I now find that the reasonable administrative expenses total $372,448. The balance on hand, about $271,870 shall be returned to Dodge.

*The Trust*

In August 1973, when Dodge was 18, he placed his $3.6 million inheritance in an irrevocable, intervivos, spendthrift trust, with himself as the sole beneficiary. The funds were deposited with a major New York bank, Marine Midland. The three trustees were his mother, his stepfather, (Dora and Dan Moran), and a New York attorney, the applicant San Filippo. Dodge was the sole beneficiary as well as the

---

**1.** This case was filed seven months before the effective date of the present Code. It is, therefore, governed by § 62(a)(1) of the former Act (former 11 U.S.C. § 102(a)(1)) and former Rule 219 "as if [the Code] had not been enacted". Public Law 95–598, § 403(a). *In re First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir. 1977), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977), is controlling precedent in this Circuit with respect to the allowance of fees under the former Act.

I have not overlooked the recent holding in *Missouri v. Jenkins,* —— U.S. ——, 109 S.Ct. 2463,

105 L.Ed.2d 229, 239 (1989) (an adjustment for delay in payment is an appropriate factor in determining a reasonable attorney's fee under 42 U.S.C. § 1988). The principle is equally applicable in this context.

In this case, however, each of the applicants whose payment has been significantly delayed, except Zane & Teitler, has been at least partially responsible for the delay. Neither Zane & Teitler nor any other applicant has requested enhancement before or at the fee hearing.

settlor. The approval of all three trustees was required for every disbursement.

In March 1978, less than five years later, Dodge, together with his mother and step-father filed here for bankruptcy.[2] The trust had been depleted and Dodge became jointly liable with his parents upon family debts, which were far in excess of his parents' assets.

### The New York Litigation

In November 1978, eight months after the bankruptcies, the attorney-trustee, San Filippo sued the bank in New York for an accounting and for restoration of the fund. In April 1979, the bank's motion to dismiss (which challenged the plaintiff's standing and the absence of essential parties) was denied, and the joinder of Dodge and the other two trustees was ordered. (CP 512, Ex C).

In October 1979, the bankruptcy trustee, the applicant Wendel, and his Palm Beach attorneys, the applicants Alley, Maass, who did not believe that Marine Midland was at fault (CP 512, Ex D), employed New York counsel, the applicant, Zane and Teitler, to "defend" the trustee in the New York litigation. The trustee and his attorneys evidently feared a claim by Dodge against his parents' bankruptcy estates. Zane and Teitler's only action was to move for dismissal of San Filippo's lawsuit against the bank.

Dodge employed a New York–Palm Beach partnership, Weiden and Crosswell to press his claim in the New York action. In August 1981, at the suggestion of the bankruptcy trustee, Weiden and Crosswell were substituted for Zane and Teitler as the trustee's counsel with instructions from this court to "proceed as expeditiously as is reasonably possible" (CP 512, Ex E). In May 1983, 21 months later, Weiden negotiated a $775,000 settlement payable to this estate by the bank.

The settlement was conditioned upon the approval of Dodge, this court and the New York court. It was approved by Dodge and by this court in July 1983 (CP 473).[3] The applicant San Filippo, whose approval was not required, opposed the settlement upon the ground that it was inadequate. Justice Greenfield of the New York County Supreme Court took the matter under advisement.

In June 1986, three years of complete inaction later, Weiden having died in August 1985, this court enlisted the applicant Weil, Gotshal of New York to replace Weiden and Crosswell as special counsel to resolve the New York litigation (CP 572), in order that the three related bankruptcies might be concluded.

That firm, through the intercession of the Deputy Chief New York State Administrative Judge, obtained Greenfield's Final Judgment approving the settlement in July 1987, after his four years' consideration of San Filippo's objections. The settlement, which had presumed prompt approval, contained no provision for interest.

San Filippo subsequently prosecuted two appeals to the Appellate Division opposing the settlement, both successfully defended by Weil, Gotshal. They were resolved in December 1986 and March 1988.

San Filippo then, in April 1988, filed an accounting action before Greenfield seeking imposition of a $227,590 lien against the settlement for his fees and expenses. The prosecution of that action was enjoined by this court (Adv.Proc. 88–0219). San Filippo's subsequent motion before the New York Appellate Division to countermand this court's injunction was denied June 9, 1988, finally terminating the New York litigation. The settlement proceeds were received here by the trustee in December 1988, five years and seven months after the settlement had been formalized by counsel for all of the parties.

---

2. These three cases, 78–328, 329 and 330, have been administered jointly (former Rule 117(b)), but have not been substantively consolidated.

3. Dodge subsequently withdrew his consent and told the New York Court that he had given his notarized consent to his attorneys "under duress". That charge, vigorously disputed by his attorneys and by independent witnesses, was subsequently abandoned by Dodge.

## San Filippo

■ San Filippo seeks $164,701 in fees and "disbursements" (CP 15 in Adv.Proc. 88–0219). The sole basis for the application is:

"Had it not been for the action started by me, the settlement amount of $775,-000 would not have been created."

The statement is accurate. However, San Filippo effected no recovery and the loss resulting from his protracted opposition to the settlement negotiated by Weiden (the direct expense to the estate of overcoming his opposition plus the loss of use of the money [4]) completely offsets the value of the time he spent in initiating the New York action.

San Filippo now insists that he did not cause any part of the five-year delay in the approval of the settlement, which he now seeks credit for and wants to be paid from. The record is clearly to the contrary. Though he professes to have acted solely in the interest of Dodge, I am persuaded that San Filippo's only interest has been the recovery of a fee for himself.[5] His application is denied.

## Weil, Gotshal

■ This preeminent firm undertook a difficult and unwelcome assignment, without a retainer and no assurance of compensation.[6] It has been required to do much more than was initially anticipated. Its contribution to the administration of this estate was both extraordinary and essential. Its fully documented application (CP 640) in the total amount of $86,679 is approved with this court's grateful appreciation.

---

4. Conservatively assuming an average of 6% interest compounded annually, this settlement would have earned $262,124 interest for Dodge during the five years its payment was delayed after it was negotiated by his attorneys, Weiden and Crosswell.

5. He has also succeeded in diverting attention from his own possible culpability.

6. When I asked Mr. Miller for his firm's help, he had just been retained to see Texaco through its bankruptcy reorganization.

## Weiden and Crosswell

■ The application (CP 645) for this firm, in the name of Weiden's estate and Crosswell's guardian, seeks $211,750 in fees, $48,794 expenses and $14,452 "interest on expenses".

When the estates of Dodge's parents were resolved three years ago, the valuable contribution and the fee applications of these two attorneys were reviewed in detail in a May 30, 1986 Order on Fee Applications (CP 570 at 7–9). Those findings and conclusions are incorporated here by this reference.

As was noted there, the firm had agreed to reduce its original contingent fee (25%) for all of its services to $160,000 (21%). Subject to receipt of the settlement, that fee was approved plus Weiden's expenses $29,847, which included substantial charges by Crosswell. Crosswell's appeal of that Order (CP 575) was unsuccessful.

■ This application is approved in those two amounts.[7] To the extent it exceeds these sums, it is denied. There have been no productive or meaningful services since the 1986 Order and there is no basis for the recovery of additional expenses. Nor is there any predicate for the recovery of interest. This firm failed to include in their settlement any provision for the accrual of interest, a substantial though understandable omission. The firm should now share with its clients the consequences of that omission.

## Wendel and Alley, Maass

Bankruptcy trustee Wendel (CP 673) and his general counsel, Alley, Maass (CP 511,

---

7. Though Crosswell persisted in submitting separate applications, I agree completely with present counsel for the applicant firm, that Weiden and Crosswell were partners. Both are bound by Weiden's stipulated fee.

Though the 1986 Order preserved (at 8) Crosswell's right to renew in this case her separate applications (which were denied as to those two cases). Those applications are subsumed by the firm's stipulated fee and they are denied here.

No deduction or adjustment is to be made now on account of the $2,000 already paid to this firm from the parents' bankruptcy estates.

544, 664, 665) have applied, respectively, for $13,788 plus $8.70 expenses, and $49,501 plus $2,206 expenses.

The fees of both these applicants were reviewed in the 1986 Fee Order (CP 570) discussed above. The findings and conclusions expressed in that Order are incorporated here by this reference. The services of these applicants in the related bankruptcies of Dodge's parents necessarily overlapped to some extent their services in this case. They have already been fully compensated for those services.

■ *Wendel.* The *maximum* compensation for a trustee under the Act is limited to a percentage "upon all moneys disbursed or turned over by them to any persons, including lien holders" § 48(c) (former 11 U.S.C. § 76). Wendel has included in his calculation of the maximum fee $473,515 disbursed by his general counsel to satisfy mortgages while closing the sale of Dodge's Palm Beach home. I disagree.

Wendel never disbursed or had any responsibility for any of these funds. Nor did he bring any of these funds into the estate. He employed, at the estate's expense, an auctioneer to sell the property that produced the funds, and he employed, at the estate's expense, the lawyers who conducted the closing and disbursed the funds. The estate should not bear the expense *twice* of administering these assets.

Wendel's *maximum* permissible fee in this case is $26,154. His application, 53% of the maximum, is reasonable and is approved, as is reimbursement of his $8.70 expenses.

■ *Alley, Maass.* Compensation for the services of Alley, Maass for the first eight years of this bankruptcy (1978–1986) was fixed in the 1986 Fee Order (at 4–5) in the amount of $33,991 plus expenses of $1,682. It has filed a supplemental application (CP 664) seeking an additional $15,510 for time spent (93.4 hours) during the last three years, plus additional expenses of $524. Reimbursement for the additional expenses is approved. The additional fee requested is denied.

The additional services have consisted primarily of (i) monitoring the work of Weil, Gotshal, (ii) of prosecuting adversary proceeding 88–0219 which enjoined San Filippo and his attorney, Doman, from making efforts outside this court to recover fees from the settlement proceeds, and (iii) establishing the interest payable under the Act to creditors from the surplus available in this case.

The work of Weil, Gotshal did not require monitoring by this applicant. The adversary complaint was proposed by and prepared by Weil, Gotshal. Both defendants defaulted. This applicant's involvement was minimal. This applicant requested instruction from this court on the interest issue (CP 652). It took no position. The research and the decision (CP 660) were the work product of this court.

In denying a supplemental fee, I do not doubt that the applicant spent the time claimed, nor do I question the firm's qualifications. I do question the necessity for and the value of the time spent.

I have also considered the fact that much of this applicant's effort during the first eight years and that of the six special counsel retained during that time was spent in the fruitless pursuit of jewelry and other personalty believed to have been secreted by Dodge was a great waste of time, while the applicant completely ignored this estate's primary asset, Dodge's cause of action in New York, both before and after it was filed by San Filippo. This applicant contributed nothing whatsoever to the recovery of the estate's principal unencumbered asset.

Instead, this applicant probably delayed the ultimate recovery of that asset from October 1979 to August 1981 by discouraging (CP 512, Ex D; and CP 579) the trustee's original special counsel in that litigation from pursuing Marine Midland, and thereby encouraged the filing of the trustee's motion to dismiss, which subsequently furnished the predicate for San Filippo's protracted contention that the trustee had abandoned Dodge's claim. The 1986 Fee Order reflects no adjustment on account of the circumstances related in this para-

graph, because they first came to my attention at the subsequent rehearing of that Order (CP 579).

I lay responsibility for the poor judgment exercised here upon the attorneys rather than their client, Wendel, because I know that lay trustees (as they should) rely completely upon counsel in such matters. One is entitled to expect better judgment from the experienced attorney (Chauncey) retained by this trustee as his general counsel.

### Zane & Teitler

 As was established on rehearing (CP 579) of the 1978 Fee Order, this firm's inactivity on behalf of this estate in the New York litigation "resulted from instructions by the trustee's general counsel. The firm did successfully intervene, over opposition, which required a successful appeal and the charge made for its time in this activity and in other necessary motion practice [$7,353] is reasonable." This fee was approved then in this case, subject to the ultimate resolution of this case. It is allowed in that amount now.

### The Chapter XII Trustee

This case, like those of Dodge's parents, was filed originally under Chapter XII (real property reorganization) under the former Act. Two months later, in May 1978, Ralph G. Riggle, who was without any previous experience as a bankruptcy trustee, was appointed (CP 25) Chapter XII trustee at the suggestion of creditors. A few days later, he employed Alley, Maass as his counsel (CP 35).

Less than two months later, the case was converted to a Chapter VII liquidation and Wendel, an experienced bankruptcy trustee, was elected by the creditors to replace Mr. Riggle. (CP 44).

Mr. Riggle never "disbursed or turned over" any money to any creditor during his brief tenure. He is, therefore, entitled to no compensation under § 48(c) of the former Act, *supra*. Mr. Riggle, who never filed a final report or any fee application, died in March 1986. Mrs. Riggle has requested compensation for his services. (CP 671). For the foregoing reasons, that request must be denied.

### Statutory Costs and Charges

The trustee is authorized and directed to pay the required court costs ($26,-164.50)[8] and charges ($45) to the Clerk, for transmission to the Treasury. These mandatory costs and charges were statutorily imposed under the former Act.

DONE and ORDERED.

---

8. The statutory costs are based upon the estate's net assets. A part ($149,797.61) of the net assets of this estate was paid (because of Dodge's joint liability) to creditors of his mother and stepfather, through the parents' bankruptcy cases, 78–328 and 329. Costs have already been paid to the Treasury from those estates upon this sum. I agree with the Clerk that they should not be deducted again from this estate. The costs approved in this Order, therefore, are not calculated on the Dodge assets disbursed through his parents' estates.