183 B.R. 972 (1995)
In re Darlene J. NELSON, Debtor.
Darlene J. NELSON, Plaintiff,
v.
PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY; Student Loan Servicing Center; Student Loan Marketing Association; and United States Department of Health and Human Services, Defendants.
Bankruptcy No. 90-15311-BKC-AJC. Adv. No. 95-0232-BKC-AJC-A.
United States Bankruptcy Court, S.D. Florida.
June 10, 1995.
*973 *974 D. Jean Ryan, James B. Miller, Law Offices of D. Jean Ryan, P.A., Miami, FL, for debtor/plaintiff Darlene J. Nelson.
Robert A. Cooper, Robert A. Cooper, P.A., Miami, FL, for creditor/defendant Pennsylvania Higher Educ. Assistance Agency.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
A. JAY CRISTOL, Chief Judge.
THIS CAUSE came on for trial on May 15, 1995, on the Debtor's complaint seeking to determine the dischargeability of certain student loans ("HEAL Loans") and to hold the Pennsylvania Higher Education Assistance Agency ["PHEAA"] and/or Student Loan Servicing Center ["SLSC"][1] in contempt of Court for violation of the permanent injunction afforded by the Debtor's discharge; and upon the Counterclaim of PHEAA, and the Court, having reviewed the written direct testimony of the witnesses as presented pursuant to this Court's pre-trial instructions; having heard the testimony on cross- and re-direct examination; having observed the candor and demeanor of the witnesses; having considered the arguments of counsel; and being otherwise duly advised in the premises, does hereby make the following findings of fact and conclusions of law:
This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and this is a core matter pursuant to 28 U.S.C. § 157(a)(2)(I).
At the outset, the court notes that, pursuant to an agreement between the parties, the U.S. Department of Health and Human Services has been dropped as a party to these proceedings, although they have stipulated and agreed to be bound by this Court's ruling. The Debtor's case proceeded as against PHEAA, SLSC and SLM.
The facts of this case are mostly undisputed and uncontradicted. The Debtor is a thirty-five year old woman who graduated from the University of South Florida in 1985 with a bachelor of science degree in microbiology. She was subsequently admitted to the Philadelphia College of Osteopathic Medicine, and began her studies there during the Fall term of 1986. Like most students of limited financial means, she accepted student loans to pay for this advanced education. In particular, she accepted two loans which are at issue in this case: 1) a HEAL[2] Loan given to the Debtor in the Fall of 1986; and 2) a HEAL Loan granted in early 1988.[3]
The Debtor suffered a nervous breakdown during the fall term of 1987. Because of this breakdown, the Debtor was unable to complete her studies at the College of Osteopathic Medicine and was dismissed for academic insufficiency in December, 1987.
Upon being dismissed from school, the Debtor returned home to live with her mother, threw away any evidence of her achievements, *975 and entered into a world of self-imposed exclusion and isolation.[4]
The Debtor tried several times over the years to return to undergraduate studies and get her life together; however, this was to no avail, due to her inability to focus and concentrate. Despite further attempts, she was unable to complete any further courses. At some point in time, the Debtor began seeing a psychiatrist. This psychiatrist testified that the Debtor now suffers from Recurrent Major Depression with Psychotic Features, and slight Paranoia, as a result of the mental breakdown she suffered while attending medical school. The psychiatrist also testified that despite the Debtor's previous abilities, the Debtor's long-term prognosis regarding her existing condition, is minimal at best. The Court finds the psychiatrist's uncontroverted testimony credible and completely reliable.
On August 2, 1990, the Debtor filed a voluntary petition under Chapter 13. She listed PHEAA and the Student Loan Servicing Center as creditors in her bankruptcy schedules, and proposed a plan that provided for payment of twenty-five percent to all unsecured creditors (including the student loans). Her Chapter 13 plan was confirmed by Order of this Court dated November 12, 1990. PHEAA filed a proof of claim in the amount of $35,061.34; and was subsequently paid the sum of $8,664.48 through the Debtor's confirmed plan. The Debtor successfully completed her Chapter 13 plan and received her discharge by Order of this Court dated August 4, 1994.
Subsequent to receiving her discharge, the Debtor began receiving numerous dunning letters from PHEAA and SLSC demanding payment on the HEAL Loans. Upon inquiry by the Debtor and her counsel, PHEAA claimed that the remaining obligations on the HEAL Loans were not discharged pursuant to the statutory authority set forth in Title 42 of the United States Code. This complaint to determine the dischargeability of the HEAL Loans followed.
The issue which the Court must now determine by virtue of this proceeding, is whether the Debtor's HEAL Loans were discharged, or are dischargeable.
In the first instance, it is PHEAA's position that 42 U.S.C. § 292f(g) is the controlling statute (rather than 42 U.S.C. § 294f(g)), because of the subsequent amendment of § 294f(g) in 1993, which enacted § 292f(g). However, based on a careful review of the latest executed promissory note between the Debtor and PHEAA, the Court finds that the previous statute  § 294f(g)  is controlling, because it was the statute in effect during the relevant period and because PHEAA's own promissory note contains similar language regarding the discharge of said loan to that found in § 294f(g), (i.e., the five year period shall apply.)
Secondly, to apply the new statute (§ 292f(g)) to the instant case would create a manifest injustice to this Debtor. (See In re Barrows, 159 B.R. 86, 88-89 (Bankr.D.N.H. 1993)). The Barrows Court determined that there was no proof of Congressional intent to apply newly enacted § 292f(g) retroactively to cases then pending. Id. at 89. Further, the Court found that it would create a manifest injustice if it were to apply § 292f(g), instead of § 294f(g) because 
There is no way this Court can undo the filing decision by the Debtor and the effect that has on the Debtor' situation and credit rating and any other aspects of a bankruptcy filing that may be detrimental to the Debtor by now telling the Debtor "Sorry, but what you thought you would be entitled to when you filed this case no longer exists because Congress has changed the entitlement under bankruptcy for a discharge."
Id.
This Court adheres to this policy of applying the law in effect at the time of the Debtor's bankruptcy filing, absent clear Congressional intent to do otherwise. See e.g. In re Dodge, 104 B.R. 491 (Bankr.S.D.Fla.1989); In re Fitzpatrick, 137 B.R. 533 (Bankr. *976 M.D.Fla.1992); Bowen v. Georgetown University Hospital, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) ("Congressional enactments should not be given retroactive effect unless their language requires it.").
Having found that 294f(g) is the controlling statute, the Court must apply the terms of said statute to the instant case.[5] Section 294f(g) provides that a HEAL Loan 
may be released by a discharge in bankruptcy under any chapter of Title 11 only if such discharge is granted 
(1) after the expiration of the 5-year period beginning on the first date, as specified in subparagraphs (B) and (C) of section 294d(a)(2) of this title, when repayment of such loan is required;
(2) upon finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable; and
(3) upon the condition that the Secretary shall not have waived the Secretary's rights to apply subsection (f) of this section to the borrower and the discharged debt.
In seeking to discharge a HEAL loan, a debtor must meet all three requirements under 42 U.S.C. § 294f(g). In re Quinn, 102 B.R. 865, 867 (Bankr.M.D.Fla.1989); In re Green, 82 B.R. 955, 957 (Bankr.N.D.Ill.1988). The parties have stipulated that the last requirement of § 294f(g)(3) that the Secretary of HHS not have waived certain rights, is not applicable to the instant case because the Plaintiff's failure to complete her medical studies prevents her from practicing as a health professional. Therefore, the issues to be decided by this Court are whether the five year period referred to in § 294f(g)(1) had elapsed prior to the Debtor receiving her discharge and whether the denial of discharge of the HEAL debt would be unconscionable.
The first issue to be addressed by this Court is whether the five-year period referred to in § 294f(g)(1) had elapsed prior to the Debtor receiving her discharge in this case. Both of the notes now at issue provide that repayment was required on the first day of the tenth month after the Debtor was no longer a full-time student at a HEAL institution.[6] It is undisputed that the Debtor was no longer attending the College of Medicine after December, 1987. Accordingly, the Debtor argues that she was required to make payments on these loans on October 1, 1988, at the latest. PHEAA, however, has countered that the Debtor, as a result of various forbearances, was not first required to make payments on the loans until July of 1990.
The Court rejects PHEAA's argument for two reasons. First, although the Debtor did not timely remit her first payment in October, 1988, she did make a payment that was accepted by PHEAA in November, 1988. Subsequent to the November, 1988, payment (and several payments thereafter), the Debtor formally requested a forbearance in June, 1989. PHEAA granted the forbearance, and gratuitously elected to retroactively apply same back to October, 1988, through September, 1989. Despite this gratuitous act, the Court finds that the loans were first required to be paid on October 1, 1988.
Secondly, the Court finds that forbearance agreements do not toll the running of the period. The Court notes that if Congress had intended forbearances to toll the time for discharge under § 294f(g), it would have so specified by using the plain language now found in § 292f(g). Thus, as the Barrows Court found, "the forbearance agreements did not toll or otherwise extend the time period set forth in [§ 294f(g)]." See Barrows, supra, at 88 n. 2.
Accordingly, the Court finds that since the first date required for repayment was October *977 1, 1988, and since the Debtor did not receive her discharge until August 4, 1994, the five year period required, pursuant to § 294f(g)(1), has been satisfied.
The only remaining issue is whether the denial of the discharge of the HEAL Loans would be "unconscionable". Although Congress did not define "unconscionable" in the statute, several courts have determined that "unconscionable" is defined as "shockingly unfair, harsh, or unjust." See e.g. In re Kline, 155 B.R. 762, 766 (Bankr.W.D.Mo. 1993), and the cases cited therein. Further, the courts will generally look at all of the facts and circumstances of each case in determining what is unconscionable, and will specifically look at the following factors to determine whether it would be unconscionable to discharge a HEAL Loan: 1) income; 2) earning ability; 3) health; 4) accumulated wealth; 5) dependents, if any; 6) age; 7) educational background; and 8) professional degree. In re Kline, 155 B.R. at 765; In re Quinn, 102 B.R. at 867.
Considering the first two Quinn factors, income and earning ability, the Court finds that the Debtor's income has been minimal over the past several years since she was dismissed from medical school. The Debtor's only means of support over this period has been by virtue of family members (particularly her mother), and through minimum and below-minimum wage jobs at various restaurants. Her gross salary never exceeded $19,000.00 in a given year and her income has not shown steady increases. The Debtor is presently employed as a "phlebotomist",[7] earning $9.41 per hour. The Debtor's future earning ability is also limited. She has a college degree which she has never used and which was intended for a career in the medical profession. However, her current coping and decision-making skills are minimal. The Debtor is unable to financially support herself, and if she earned more money, she would only have to pay her true share of her medical and psychiatric bills. Her present monthly expenses are approximately equivalent to her net income when considering the assistance of her mother and her psychiatrist (who voluntarily reduces his bill from $750 per month to $250 per month).
As to the third Quinn factor, health, the Court finds that the Debtor's health is less than average and that her chance of full recovery is in the far future, if at all. The Court accepts her psychiatrist's diagnosis that the Debtor is presently suffering from a mental disease known as Recurrent Major Depression with Psychotic Features, and slight Paranoia. This psychiatrist testified that the Debtor is totally dependent, emotionally and financially, upon the aid of others; that, absent her mother's assistance, the Debtor would be homeless and living in the streets; that the Debtor has secluded herself as a result of her disease and is under medical care; and that her care includes weekly psychotherapy and the use of anti-depressants. Further, it is the psychiatrist's contention that there is simply no indication that she will improve due to the length of time that she has suffered from this disease  a period of over 7 years. The Court adopts these findings and further finds that the Debtor's emotional and psychological impairments prevent her from functioning as a participating member of society and maintaining a job which would allow her to become totally self-supportive.
Further, it is recognized that "[a] medical condition that disables the debtor constitutes an extraordinary circumstance just the same as high medical bills resulting from that condition." See Kline, supra at 767. Thus, this factor alone,  that being the current health of the Debtor,  is a very powerful factor in this Court's finding that these debts are dischargeable.
Regarding the fourth and eighth Quinn factors, educational background and professional degree, the Court finds that the Debtor has never earned or received her medical degree, and that it is highly unlikely that she will ever be able to obtain same. Further, the Court finds that her 10 year old bachelor degree in microbiology is basically of no value to her without the advanced medical degree.
*978 Despite the Debtor's lack of dependents and relatively young age, on the fifth and sixth Quinn factors, the Court finds that her psychiatrist's prognosis of limited future improvement, as well as her prospects of being continually dependent on others, outweigh any advantages stemming from her relative youthfulness and lack of dependents.
The seventh Quinn factor, accumulated wealth, initially seems to be more problematic. While working as a waitress and a phlebotomist from the period of her initial partial recovery to the present, the Debtor managed to save $16,000.00. After the Debtor filed her petition, the Debtor's mother quit-claimed to Debtor a joint tenancy interest with right of survivorship in the house they share. Debtor's mother transferred the interest in this way in an effort to avoid probate expenses. The Debtor has no present ability to sell the house or otherwise take sole possession of same and has not contributed anything to the acquisition of the house by her mother.
The fact that the Debtor may or may not be able to sell her interest in the house at some indeterminate time in the future is not material to the Court's decision in this case. It likewise does not sway this Court that the Debtor has managed to save approximately the cost of a day and a half in intensive care in a modern hospital due to the long period of time it took her to save such a sum.
It is the Court's belief that Congress created the "unconscionable" standard for use with HEAL loans to prevent a borrower who obtains a medical degree with a HEAL loan and is on the threshold of a prestigious, high paying medical career, from easily discharging the HEAL loan in bankruptcy. The Court cannot believe that it was the intent of Congress to further torment an unfortunate person like the Debtor herein.
In Kline v. U.S., 155 B.R. 762 (Bankr. W.D.Mo.1993), the court determined that it would be unconscionable to except from discharge an obligation that the debtor incurred under the HEAL program, in order to obtain a chiropractic degree that she had not and would never utilize, where debtor's chronic depression, anxiety and panic disorders would prevent debtor from obtaining jobs related to her degree and had kept her from holding other than low paying jobs for short periods of time.
In discussing its view as to how the dischargeability of a debtor's HEAL loan is to be determined, the court in In re Gronski, 65 B.R. 932 (Bankr.E.D.Pa.1986) stated in dicta that it considered it "unconscionable to refuse to discharge recipients of HEAL loans who fail to complete medical school and have no other substantial means, either from a spouse, alternative employment, or other financial resources." Id. at 937.
Therefore, after carefully considering all of the facts and circumstances of this case, the evidence presented at trial and the case law, the Court finds that more than five years from the date the first payment became due under the loans had passed prior to the discharge of the Debtor and that it would be unconscionable to deny this Debtor a discharge of the subject HEAL Loans.
Based on the foregoing, this Court finds that the Debtor is hereby discharged of the obligations owed on her HEAL Loans and that PHEAA's Counterclaim is denied.
NOTES
[1] SLSC is an agent of PHEAA.
[2] HEAL is the acronym for "Health Education Assistance Loans" and are provided by private lenders for education of health professionals. These loans are fully guaranteed by the Department of Health and Human Services. See In re Hochman, 16 C.B.C.2d 715, 716, & n. 1, 71 B.R. 833 (Bankr.N.D.Ga.1987).
[3] The Debtor was no longer in school after December, 1987. However, the Philadelphia College of Osteopathic Medicine demanded that she borrow the additional money in 1988 to complete payment for the Fall term of 1987.
[4] The Debtor testified that she had thrown away her bed and slept on her bedroom floor because she believed that this was all that she was entitled to. She would lock her bedroom door, stay in her bedroom for hours on end, and pray to God for forgiveness.
[5] Dischargeability of HEAL student loans is governed by 42 U.S.C. § 294f(g) rather than the general provision of the Bankruptcy Code governing dischargeability of most types of educational loans, 11 U.S.C. § 523(a)(8). U.S. v. Wood, 925 F.2d 1580 (7th Cir.1991); In the Matter of Johnson, 787 F.2d 1179 (7th Cir.1986); In re Hines, 63 B.R. 731 (Bankr.D.S.D.1986).
[6] Sections 294d(a)(2)(B) and (C) define entitlement to deferments that would toll this period. However, the Debtor did not at any time qualify for, or apply for, any such deferment.
[7] A person who extracts blood from patients.