In re Joseph Thomas ASCUE, Debtor.

United States of America, Plaintiff,

v.

Joseph Thomas Ascue, Defendant.

Bankruptcy No. 7–97–03313.

Adversary No. 7–97–00294A.

United States Bankruptcy Court,
W.D. Virginia,
Abingdon Division.

Oct. 24, 2001.

---

National Health Service Corps (hereinafter NHSC) debt in excess of $512,000 is not dischargeable under 42 U.S.C. § 254o(d)(3)(A).[1] The debtor contends that five years have past since repayment was required and that nondischarge would be unconscionable. Neither party disputes that five years have past since repayment was first required; the only question is whether it would be unconscionable to deny discharge. The Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2), having heard the evidence presented at trial, having observed the candor and demeanor of the debtor in trial, and having reviewed the arguments of counsel and the authorities submitted, concludes that the debtor sustained his burden of proving that denial of discharge of a portion of the indebtedness would be unconscionable and, therefore, a portion of the debt is dischargeable.

Vincent J. Carroll, Richlands, Virginia, counsel for Joseph Thomas Ascue, debtor.

Thomas L. Eckert, Assistant United States Attorney, Roanoke, Virginia, for plaintiff.

## DECISION AND ORDER

ROSS W. KRUMM, Chief Judge.

The matter before the court involves a complaint filed by the United States of America (hereinafter the Government) to determine the dischargeability of a debt listed by Joseph Thomas Ascue (hereinafter debtor) in the chapter 7 petition he filed on August 26, 1997. The Government's complaint alleges that the debtor's

### Background

The debtor attended Eastern Virginia Medical School and graduated in 1984. To finance his education, the debtor applied for a scholarship award from the NHSC. The debtor received a total of $42,017.00 in scholarship awards from 1982 through 1984.

The scholarship awards contained a contractual provision that required the debtor to provide one year of obligated service for each year he received financial support. See 42 U.S.C. §§ 254l (f)–(g). The debtor was obligated to perform the service in a health manpower shortage area, as determined by the Secretary of Health and

1. 42 U.S.C. § 254o(d)(3)(A) states:
Any obligation of an individual under the Scholarship Program (or a contract thereunder) or the Loan Repayment Program (or a contract thereunder) for payment of damages may be released by a discharge in bankruptcy under title 11 of the United States Code only if such discharge is granted after the expiration of the five-year period beginning on the first date that payment of such damages is required, and only if the bankruptcy court finds that nondischarge of the obligation would be unconscionable.

Human Services (hereinafter Secretary). *See id.* If the debtor failed to begin or complete the period of obligated service, the contract entitled the Government to recover liquidated damages in an amount equal to three times the scholarship funds awarded, plus interest. *See* 42 U.S.C. § 254o(b)(1)(A).

Upon graduation in 1984, the debtor requested and received a four-year conditional deferment to pursue a residency in Atlanta, Georgia. The debtor left the residency after one year. He then requested a one-year suspension of the service obligation due to personal and family problems. The request was granted upon the debtor's signing a Conditional Service Agreement (hereinafter CSA), which reaffirmed his original service obligation. The debtor signed the CSA. When the suspension expired, the debtor requested another suspension in order to locate a suitable domicile near his family where he could fulfill his service obligation. The suspension was effective until June 1987. The debtor signed another CSA to obtain this suspension.

The debtor was notified by the NHSC in December of 1986 that he was assigned to the Indian Health Services in Oklahoma City. Sometime in April 1987, the debtor informed the NHSC that he would not accept the appointment. Shortly thereafter, the NHSC informed the debtor that refusal to accept appointments could result in a default of his obligation, which would allow the Government to recover liquidated damages.

In September 1987, the debtor requested another deferment to pursue a residency in Norfolk, Virginia. The debtor signed another CSA. The deferment was granted

through 1990. The debtor left the residency after four months.

On February 8, 1988, the debtor filed a petition for bankruptcy under Chapter 7. The bankruptcy court granted the debtor a discharge on May 25, 1988.[2] On July 15, 1988, the debtor requested and received another deferment to locate a residency in Columbus, Georgia. This deferment was scheduled to run until January 1, 1989. The debtor started his residency on October 1, 1988, but he quit after a few weeks. In November 1988, the debtor requested an additional deferment for the purpose of locating another residency. This deferment was granted and scheduled to last until June 1989, on the condition that the debtor submit monthly progress reports to the NHSC. When the debtor failed to submit the first report, NHSC rescinded the deferment.

In April 1989, the NHSC assigned the debtor to the Federal Bureau of Prisons (hereinafter BOP). He was directed to respond to BOP officials to receive his specific assignment. The debtor did not respond. The BOP assigned the debtor to a facility in Safford, Arizona, but, again, the debtor failed to respond. By September 14, 1989, NHSC notified the debtor that he was in breach of his NHSC contract because he failed to begin the period of obligated service which commenced on July 1, 1989.

On January 20, 1994, the NHSC filed a complaint in the United States District Court for the Western District of Virginia to recover $330,391.02, plus interest and administrative charges.[3] The $330,391.02 consisted of $126,051.00 (three times the debtor's original loan amount), $204,280.02 (accumulated interest), and a $60 administrative charge. The debtor argued that

**2.** *In re Joseph Thomas Ascue,* No. 88–020428 (Bankr.E.D.Va.1988).

**3.** *United States v. Joseph Ascue,* No. 91–0146 (W.D.Va.1996).

the debt was uncollectible due to the bankruptcy discharge he received in 1988. On July 10, 1996, the District Court held that the debtor was in breach of his contract with the NHSC and ordered him to pay $330,391.02, plus interests, costs, any applicable penalties, and a ten percent surcharge of the debt pursuant to 28 U.S.C. § 3011. The court further found that the NHSC debt was not discharged in the debtor's 1988 bankruptcy case.

This Court also takes notice of the history and prospects of the debtor's income. From 1992 through 1995, the debtor worked in an emergency room in Grundy, Virginia, earning $140,000, $132,000, $272,000, and $85,000 respectively for those years. During this time he purchased a parcel of land and three cars, one of which was a $15,000 cash purchase. The debtor's individual income tax returns indicated an adjusted gross income of $71,169 in 1996, of $92,740 in 1997, and of $-4,081 in 1999.[4] His projected earnings for 2000 were between $26,000 and $29,000.

The decrease in the debtor's income after 1994 was due to a work related accident that occurred in 1995. While working in the emergency room, the debtor was injured when a patient fell and grabbed his arm. The debtor was operated on in August 1995, and was only able to work six hour shifts in the emergency room thereafter. He continued to suffer pain throughout his left arm and hand. The debtor was unable to treat the pain with medication because of allergic reactions, e.g., rashes and labored breathing. After subsequent medical evaluations, the debtor was diagnosed with cervical disc herniation with radiculopathy.

On November 24, 1998, the debtor filed an application for disability insurance benefits. The debtor's application was initially denied; on appeal, however, the debtor was found to be disabled from November 17, 1998 through December 31, 1999.[5] The Administrative Law Judge acknowledged the debtor's cervical disc herniation and further found that the debtor suffered from pain, loss of sensation, weakness, and muscle loss. The debtor's disability benefits were terminated because the debtor engaged in "substantial gainful activity," based on his projected earnings for 2000, and not because his health condition had improved.

The debtor filed the above captioned Chapter 7 bankruptcy petition on August 26, 1997. The debtor seeks to discharge his NHSC debt on the grounds that five years have lapsed from the time that the first payment was required and that repayment would be unconscionable. The parties do not dispute the fact that five years have passed; the only contention is whether nondischarge of the debt would be unconscionable.

### Rulings of Law

The NHSC Scholarship program funds medical training in exchange for a voluntary commitment by the physician to provide medical care for a period of years equal to the number of years the recipient received funds under the NHSC program. The recipient agrees to provide this medical service at a location assigned by the Secretary. The program is designed to redistribute medical services to underserved areas. *U.S. v. Vanhorn,* 20 F.3d 104, 111–12 (4th Cir.1994); *Rendleman v. Bowen,* 860 F.2d 1537, 1541 (9th Cir.1988) (quoting

---

4. The record does not contain tax returns for 1998.

5. *In re Joseph T. Ascue,* Social Security Administration, Office of Hearing and Appeals (Feb. 21, 2001).

S.Rep. No. 94–887, 94th Cong., 1st Sess. 201 (1975) as stating NHSC Scholarship Program is not intended "as a mechanism solely to subsidize health professional education," but "as a means to overcome a geographic maldistribution of health professionals"). Due to the unique nature of the program, the indisputable lack of physicians in many underserved areas, and the obvious potential of many medical professionals to make a substantial income, Congress limited the ability of recipients of NHSC funds to discharge their obligations.

■ Discharge of an obligation under the NHSC scholarship program is specifically governed by 42 U.S.C. § 254o(d)(3).[6] Courts have unanimously viewed the strict dischargeability provisions of NHSC obligations as evidence of Congressional intent to deter debtors from knowingly violating their service obligations after entering into a prestigious and lucrative profession. *See, e.g., United States v. Kephart,* 170 B.R. 787, 791 (W.D.N.Y.1994) (discussing Congress's intent); *Nelson v. Pennsylvania Higher Education Assistance Agency,* 183 B.R. 972, 978 (Bankr.S.D.Fla.1995) (same). In addition to a mandatory five-year period before a discharge can be obtained, Congress requires the bankruptcy court to find "that nondischarge of the obligation would be unconscionable." 42 U.S.C. § 254o(d)(3)(A).[7] It is the debtor's burden to prove unconscionability. *See In re Johnson,* 787 F.2d 1179, 1182 (7th Cir. 1986).

■ Unconscionable is not defined in the statute, and to some extent the term is left to the discretion and judgment of the court. *See In re Barrows,* 182 B.R. 640, 650 (Bankr.D.N.H.1994) (stating courts have some discretion in defining unconscionable); *In re Hines,* 63 B.R. 731, 736 (Bankr.D.S.D.1986) (stating "unconscionability is likened to beauty in that it appears to the senses and is found in the eyes of the beholder"). Courts have held that this standard is significantly more burdensome than the "undue hardship" standard used to discharge educational loans under 11 U.S.C. § 523(a)(8)(B). *See Matthews v. Pineo,* 19 F.3d 121, 124 (3rd Cir.1994); *United States v. Kephart,* 170 B.R. 787, 791–92 (W.D.N.Y.1994). Numerous courts have given a dictionary definition of unconscionable as that which is "lying outside the limits of what is reasonable or acceptable, or shockingly unfair, harsh or unjust." *United States v. Rice,* 182 B.R. 759, 761 (N.D.Ohio 1994); *In re Malloy,* 155 B.R. 940, 945 (E.D.Va.1993); *In re Hines,* 63 B.R. 731, 736 (Bankr.D.S.D.1986). Unconscionability is determined by evaluating the totality of the facts and circumstances. *Rice v. United States,* 78 F.3d 1144, 1149 (6th Cir.1996); *In re Malloy,* 155 B.R. at 945.

■ In determining whether nondischarge would be unconscionable courts should consider objective factors such as the debtor's educational background, pro-

---

6. Congress included the liquidated damages provision in the statute which provides for treble damages plus interest upon the recipients failure to satisfy the service obligation. 42 U.S.C. § 254o(b)(1)(A). The severe monetary penalty was intended to impress upon the recipient the serious nature of the obligation and to deter those who may want to forego the obligated period of service. *See Buongiorno v. Sullivan,* 912 F.2d 504, 509–10 (D.C.Cir. 1990).

7. Loans granted under the Health Education Assistance Loan Program ("HEAL"), 42 U.S.C. § 294f(g) similarly require a showing that nondischarge would be unconscionable. Accordingly, the NHSC unconscionable standard is the same one applied in cases involving HEAL loans. *See Kephart,* 170 B.R. at 792.

fessional degree, income, earning ability, health, accumulated wealth, dependents, and age. *In re Malloy*, 155 B.R. at 945 (citing *In re Emnett*, 127 B.R. 599, 603 (Bankr.E.D.Ky.1991)). Courts should also consider the size of the debt and the rate that interest is accruing. *See Rice*, 78 F.3d at 1149. Additionally, "the court should examine, whether, and to what extent, the debtor's current situation is likely to continue or improve." *Id.* (citing *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir.1987), as requiring the debtor to show that the current situation "is likely to persist for a significant portion of the repayment period"). Finally, the court should consider the debtor's past efforts to repay the loan, including an examination of the debtor's financial position during the years the loan was due, the debtor's acquisition of new financial burdens contemporaneous with the NHSC debt, and the relative size of the NHSC debt to the debtor's total indebtedness. *See In re Rice*, 78 F.3d at 1150.

■ The parties do not dispute that the debtor, at age 46, is relatively young and that he has no dependents. It is also undisputed that the debtor has a medical degree and that he, in fact, earned significant income from 1992 through 1998. Nor can it be disputed that the debtor utterly failed to fulfill his service obligations or to make payments on the debt. This being said, however, the debtor's present medical condition, financial affairs, and prognosis are considerably bleak and impact the determination of unconscionability in the eyes of this Court.

■ The debtor's negative adjusted gross income in 1999 is concededly attributed to the period he was adjudged disabled. Despite the debtor's prior income history and earning capacity, due to the persistent nature of his injury, he was projected to earn only $26,000 to $29,000 in 2000. This amount is significantly lower than the income he previously earned. Furthermore, the debtor's condition has not improved in six years, nor is there any indication that his health will ever improve. This Court is convinced that the debtor's health prevents him from earning significantly more than the above-mentioned estimates. "A medical condition that disables the debtor constitutes an extraordinary circumstance just the same as high medical bills resulting from that condition." *Nelson*, 183 B.R. at 977. Thus, the current health of the debtor is a significant factor in favor of discharge. *Id.* This Court also takes notice that the debtor is not responsible for the events giving rise to his injury. Lastly, the Court recognizes that the debtor does not now own significant assets.

■ Although a portion of his sizeable debt to the NHSC is attributable to the debtor's own inaction, the growth of the debt coinciding with the deteriorating state of the debtor's health is not directly attributable to the debtor's culpably ignoring his obligations to the Government. The totality of the facts and circumstances surrounding the debtor and his obligations to the Government convince this Court that to completely deny discharge would be unconscionable. It would be shockingly unfair, harsh, or unjust to require this unhealthy debtor to pay the Government the current indebtedness in excess of $500,000 dollars. In addition to the other reasons stated above, this Court finds it significant that, alone, the interest obligation on the debt may very well exceed the debtor's ability to pay. This Court does not believe the debtor could possibly amortize the entire debt based on his current and projected income. Congress did not intend to create a hopeless and futile situation by denying discharge where the

size of the indebtedness will only grow. The impracticality and futility of not discharging a financial burden that cannot possibly be repaid is obvious.

This Court must also inquire whether it would be unconscionable to require the debtor to take additional steps to earn more money. The debtor has been operated on and has visited numerous doctors, yet his impaired condition remains. In light of the debtor's chronic injury this Court finds that it would be unreasonable to expect the debtor to return to full employment status as a physician or in some other capacity for which he is qualified. The debtor's current health, his ability to work, his projected earning capacity, the lack of culpability for his present injured state, the size of the debt, and the negative forecast for improvements in the debtor's overall health are factors that militate in favor of a discharge.

However, the debtor's continued avoidance of his service obligation and loan repayment responsibilities and the Government's apparent willingness to allow the debtor, even in light of his medical state, to fulfill his periods of obligated service convince this Court that to deny discharge of a portion of the debt would not be unconscionable. This Court must now deal with a situation that seemingly justifies contradictory holdings. Standing alone, the debtor's behavior before he was adjudicated disabled would convince this Court, rather easily, that the debtor should be left to pay the debt as it stands. Yet, the debtor's present injured state, with its concomitant financial and employment ramifications, are factors this Court cannot ignore. The post-injury facts and circumstances weigh in favor of discharge. To satisfy the competing demands for discharge and nondischarge, this Court will grant a partial discharge.

■ Although this Court is compelled by the facts and circumstances in the matter *sub judice* to grant a partial discharge, it does so fully aware of the arguments on both sides of the "partial discharge" debate. For example, in the educational loan context, 11 U.S.C. § 523(8), a seemingly majority of courts have recognized that bankruptcy courts have the authority to grant a partial discharge. *See Kapinos v. Graduate Loan Center (In re Kapinos)*, 243 B.R. 271, 277 (W.D.Va.2000) (stating majority view permits partial discharge and citing approximately sixteen different courts to support that position); *Mort v. Tennessee Student Assistance Corp. (In re Mort)*, Ch. 7 Case No. 99–00407, Adv. No. 99–00077, mem.op. at 8 (Bankr.W.D.Va. 2001) (recognizing power to grant partial discharge); *Bakkum v. Great Lakes Higher Educ. Corp. (In re Bakkum)*, 139 B.R. 680, 684 (Bankr.N.D.Ohio 1992) ("The Court, at its discretion, may excuse any portion of the debtor's student loan obligation which would create an undue hardship."). Many courts have premised the partial discharge on 11 U.S.C. § 105, as an exercise of the equitable powers of the bankruptcy court to enter any order necessary to carry out the provisions of Title 11. *See Kapinos*, 243 B.R. at 277; *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 439 (6th Cir. 1998) (stating bankruptcy court has power to take action short of total discharge under 11 U.S.C. § 105(a)).

Other courts have taken an all-or-nothing approach based on the absence of an express grant of authority allowing a partial discharge. *See United Student Aid Funds, Inc. v. Taylor (In re Taylor)*, 223 B.R. 747, 752–53 (9th Cir. BAP 1998) (It was significant to the court that the phrase "to the extent," as found in § 523(a)(2), (a)(5), and (a)(7), was not used in § 523(a)(8). The court then held that the absent phrase unambiguously precluded a

partial discharge in § 523(a)(8).). *But see Great Lakes Higher Educ. Corp., et al. v. Brown (In re Brown)*, 239 B.R. 204, 211 (S.D.Cal.1999) (The court stated that the phrase "to the extent," merely separates debts into different categories which may or may not be discharged. "The phrase ... describes the type of debt dischargeable rather than referring to the amount to be discharged."). Moreover, the Sixth Circuit also recognized the stymieing effect the all-or-nothing approach has on a court's ability to effectuate the purpose of the Bankruptcy Code where the facts and circumstances require judicial intervention in the financial burden on the debtor. *Hornsby*, 144 F.3d at 439. *See also* Thad Collins, Note, *Forging Middle Ground: Revision of Student Loan Debts in Bankruptcy as an Impetus to Amend 11 U.S.C. § 523(a)(8)*, 75 IOWA L.REV. 733, 736 (1990) (stating "[i]mplicit in this practice of revising student loan debts is the notion that a rigid, all-or-nothing interpretation does not sufficiently or effectively address the array of facts and circumstances that appear before the courts.").

Obviously the case here involves the dischargeability of a debt governed by 42 U.S.C. § 254*o* and not 11 U.S.C. § 523(a)(8). Textually, the two statutes are different. To the extent that the bankruptcy court's power to grant a partial discharge stems from § 105(a), a textual comparison is not dispositive, nor necessarily helpful; however, it may shed some light on the Congressional intent embodied in 42 U.S.C. § 254*o*(d)(3)(A).

Notably, the NHSC discharge provision does not explicitly confine the court to an all-or-nothing discharge. 42 U.S.C. § 254*o*(d)(3)(A) states "*[a]ny* obligation of an individual under the Scholarship Program ... or the Loan Repayment Program ... for payment of damages may be released by a discharge in bankruptcy under Title 11 ... only if the bankruptcy court finds that nondischarge of the obligation would be unconscionable" (emphasis added). An analysis of the word "any," which designates that which may be discharged under § 254*o*(d)(3)(A), is informative in this regard. WEBSTER's II defines "any" as "one or some, regardless of sort, quantity, or number." WEBSTER's II NEW RIVERSIDE UNIVERSITY DICTIONARY 115 (1984). BLACK's similarly defines "any" as "some; one out of many; an indefinite number," and states that the precise scope may depend on the context of the statute. BLACK's LAW DICTIONARY 94 (6th ed.1990).

Based on the definition of the word "any," the plain language of the statute arguably authorizes the court to grant a discharge of all or some obligation for payment of damages that an individual owes to the Government. The statute's use of the singular noun "obligation" may also supports this interpretation. If the statute had read, "any obligations," then the court might be limited to discharge all or some of the individual's various obligations, e.g., one of three loans or all three of three loans. As it stands, the statute authorizes the court to discharge all or some of an individual's *obligation* to the NHSC (emphasis added).

The bankruptcy court in *Kephart v. United States*, 167 B.R. 767 (Bankr. W.D.N.Y.1994), granted a partial discharge on a NHSC debt based on the facts and circumstances of that case. The district court overruled the bankruptcy court on the grounds that it would not be unconscionable to deny discharge based on its evaluation of the facts, but the court did not address the propriety of a partial discharge. *Kephart*, 170 B.R. at 791–92. *See Rice v. United States (In re Rice)*, 78 F.3d 1144, 1151 (6th Cir.1996) (reversing the bankruptcy court's partial discharge of a HEAL debt because nondischarge was not

unconscionable, and specifically leaving the open the question whether the bankruptcy court through its equitable powers can grant a partial discharge). The Sixth Circuit later held that the bankruptcy court may exercise its equitable powers to fashion a remedy to allow debtors to satisfy their obligations "while at the same time provide them some of the benefits that bankruptcy brings in the form of relief from oppressive financial burdens." *Hornsby*, 144 F.3d at 440 (addressing undue hardship discharge of educational debt). *But see Barrows*, 182 B.R. at 653 (opining that the court has power to determine only discharge or nondischarge per se, and that there is no enabling language to authorize a partial discharge for HEAL loans); *Cothran v. United States Public Health Services (In re Cothran)*, 226 B.R. 460, 463 (Bankr.E.D.Okla.1998) (citing *Barrows* and *Rice*, and denying partial discharge of a HEAL loan).[8]

Though this Court may be inclined to discharge the entire debt based on the debtor's current condition and prospects, such a holding would seem to cut against the Congressional intent embodied in the unconscionable standard based on the debtor's past behavior. To answer the competing demands warranted by the facts and circumstances of this case, this court will divide the indebtedness into nondischargeable and dischargeable amounts. The amount claimed by the Government that exceeds the original treble damages of $126,051.00 is discharged as unconscionable.

### Conclusion

The fresh start policies of the Bankruptcy Code, the facts and circumstances surrounding this debtor, coupled with the simple fact that the debtor's income is insufficient to service even the interest portion of the debt, convince this Court that it would be shockingly unfair, harsh, or unjust to deny discharge of all his debt. This Court believes that § 105(a) authorizes the bankruptcy court to grant a partial discharge and the textual analysis above lends additional support to partially discharge this debt. However, the debtor is not blameless for the failed opportunities to perform his obligation prior to his injury, nor is this Court unaware of the years wherein the debtor earned a significant income, none of which was used to repay his debt to the Government. Thus, for the reasons stated above, this Court concludes that the debtor satisfied his burden of establishing that to deny discharge of a portion of the debt would be unconscionable. Accordingly, it is

### ORDERED

That the indebtedness of Joseph Thomas Ascue to the United States of America for his National Health Service Corps debts be and it hereby is determined

---

8. The statute providing for discharge of HEAL loans states in relevant part, the following: "[A] debt that is a loan insured under the authority of this subpart may be released by a discharge in bankruptcy ... only if such discharge is granted ... upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable." 42 U.S.C. § 292f(g). The text of the HEAL loan discharge provision does not exactly mirror the comparable provision for NHSC loans. Notably, the HEAL loan statute refers to "a" debt, not "any" debt; thus, the textual analysis above may or may not apply in the HEAL loan context. The Court expresses no opinion as to the interpretation of the text of 42 U.S.C. § 292f(g), for it is not called upon to do so. The Court recognizes, of course, that the congressional intent behind the "unconscionable standard" applies with equal force to both HEAL debts and NHSC obligations, and it may be a curious result to contemplate a partial discharge in one debt but not the other. This potential dilemma, however, is not before the court today.

NONDISCHARGEABLE to the extent of $126,051.00 and JUDGMENT is hereby granted to the United States of America in said amount together with interest thereon at the Federal Judgment Rate from the date of the docketing of this decision and order in this proceeding until said judgment is paid in full and it is

**FURTHER ORDERED**

That the remaining balance of the debt owed by Joseph Thomas Ascue to the United States of America for his National Service Corps debts as determined by the United States District Court for the Western District of Virginia by order of July 10, 1996 in Case No. 91–0146 be and it hereby is DISCHARGED in this Chapter 7 proceeding.